STRATTON *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—DETROIT CHARTER—ARCHITECTS' CONTRACT FOR PLANS IS PART OF BUILDING PROJECT.

In an action against the city of Detroit to recover architects' fees for the preparation of plans and specifications to be used in the erection of a municipal tuberculosis sanitarium, the contemplated cost of which was in excess of the appropriation therefor, plaintiffs' claim that the charter provision prohibiting the making of contracts for improvements in excess of the appropriation is not applicable to their contract because it is concerned only with the amount of their fees, which are within the appropriation, is not tenable since their contract is a part of the building project, and requires them to obtain bids and draw the contracts for the work.

2. SAME—MODIFICATION OF CONTRACT NOT APPROVED BY COUNCIL VOID.

Under the Detroit city charter (title 6, chap. 7, § 2), requiring approval by the city council of all contracts on behalf of the city, the city board of health had no authority, without approval of the council, to modify a contract with architects for plans for a municipal tuberculosis sanitarium at a cost in excess of that fixed in the contract, which had previously been approved by the council.

3. SAME—CITY NOT LIABLE WHERE CONTRACT NOT APPROVED BY COUNCIL ALTHOUGH SERVICES ACCEPTED.

That Detroit city officials knowingly accepted services rendered under a contract not approved by the city council as required by the city charter (title 6, chap. 7, § 2), would not render the city liable, since to so hold would in effect eliminate said provision from the charter.

4. SAME—CITY NOT LIABLE UNDER THEORY OF RATIFICATION OR ESTOPPEL.

Under the Detroit city charter (title 6, chap. 7, § 2), the city council having no power to bind the city on an express contract for a public improvement at a cost in excess of the appropria-

tion, the city would not be liable on an implied contract therefor under the theory of ratification or estoppel.

5. APPEAL AND ERROR—DEFENSES AVAILABLE.

Where the declaration originally planted plaintiffs' right to recover on an express contract, but at the close of the proofs was amended to count on an implied contract, and the common counts added, an affirmative defense incident to said amendment is not open to the objection that it is not properly before the court on review because notice thereof was not given under the plea.

6. SAME—ASSIGNMENTS OF ERROR.

Plaintiffs' claim that the defense that the city may not be held liable beyond the amount of the appropriation is not before the court on review because not covered by any assignment of error is without merit; the record showing that it is covered by an assignment to the charge of the court permitting recovery on the *quantum meruit*.

Error to Wayne; Webster (Clyde I.), J. Submitted February 1, 1929. (Docket No. 163, Calendar No. 34,136.) Decided March 28, 1929.

Assumpsit by William B. Stratton and another against the city of Detroit and another for architects' fees. Judgment for plaintiffs. Defendants bring error. Reversed.

*Walter Barlow* (*Clarence E. Wilcox,* of counsel), for appellants.

*Divie B. Duffield, Frank Cook,* and *John P. O'Hara* (*John Conway Cook,* of counsel), for appellees.

NORTH, C. J. By a bond issue, the city of Detroit provided one million dollars to be expended in the erection of a municipal tuberculosis sanitarium in Wayne county. Three hundred thousand dollars of this amount was expended for the site, leaving

$700,000 for building purposes. This project was under the supervision of the Detroit board of health. After practically two years of preliminary consideration and investigation, the city of Detroit, acting through its board of health, on October 21, 1919, entered into a contract with the plaintiffs to render services as architects and in part to supervise the construction. The contract provided a group of buildings was to be constructed:

"For the housing of not to exceed 300 patients and the necessary service buildings, the total cost of which is not to exceed $700,000 including all architect's fees. * * *

"It is hereby mutually agreed between the parties hereto that the board of health, shall pay the architect for service rendered hereunder as follows: The architect shall receive a commission of 3 per cent. on acceptance by the board of the plans and specifications, and 2 per cent. on the total amount of certificates issued to contractors for work completed each month." (This 2 per cent. being for partial supervision.)

This contract was approved by the common council on November 18, 1919. The minutes of the meeting of the board of health, held December 16, 1919, contain the following:

"Dr. A. H. Garvin informed the board that the cost of the proposed tuberculosis sanitarium complete on an estimated cost basis of forty cents per cubic foot, using the present proposed building dimensions, would cost approximately $1,700,000. By reducing the plans and making use of basements, decreasing the width of the corridors and service portions, Dr. Garvin stated that the essential buildings could be built for approximately $745,000, the total cost without equipment to be a little over one

million dollars. The study of the revised plans were deferred to another time.''

Another meeting of the board was held December 23, 1919, and the following appears in the record thereof:

''Commissioner Pope moved that the architects, Stratton and Snyder, be instructed to prepare plans for a complete sanitarium, as understood under the terms of the existing contract, but not including the clause containing the limiting the amount, $700,000, the plans to be so arranged as to allow the deduction of certain units, as decided upon by the board, to bring the cost of the proposed buildings within the amount appropriated, which motion prevailed.''

This proposed change in the contract was not approved by the common council, and so far as appears from the record it was not submitted to that body. The Detroit city charter, tit. 6, chap. 7, § 2, provides:

''SEC. 2. No contract shall be let or entered into for the construction of any public work, or for any work to be done, or for the purchasing or furnishing of supplies for said city not herein provided for, and no such public work, performance, purchasing or supplying shall be commenced until approved by the common council, and until the contract therefor has been duly approved and confirmed by the common council, and a tax or assessment levied to defray the cost and expense of the same, and no such work, supplies and materials shall be paid for or contracted to be paid for, except out of the proceeds of the tax or the assessment thus levied.''

Following the action taken by the board of health on December 23, 1919, the plaintiffs prepared plans and specifications which were used in erecting the municipal sanitarium, but at a cost of approximately $1,700,000. For supervising the construction the

plaintiffs were paid $33,231.23; and the defendants admit they are still indebted to the plaintiffs for supervision (on the basis of 2 per cent. of the cost) in the amount of $678.34. At the close of the proofs the defendants moved the court to enter judgment for the plaintiffs in that amount and accrued interest, totaling $879.02. On this phase of the case there is no controversy. The city has also paid the plaintiffs for plans and specifications 3 per cent. of the total cost of $700,000 specified in the contract of October 21, 1919. The plaintiffs claim the right to recover in this suit $31,909.90 as a balance due them for the plans and specifications, this being computed on the basis of 3 per cent. of the total cost of the buildings for which such plans and specifications were accepted by the board of health.

The plaintiffs' declaration as originally framed planted the right to recover on the contract of October 21, 1919, and the action of the board of health taken on December 23, 1919. It was their claim that these constituted an express contract on which the defendants were liable. At the close of the proofs, and over defendants' objection, plaintiffs were allowed to amend the declaration by declaring on an implied contract and adding the common counts. Each of the parties moved for a directed verdict. The trial court held that the plaintiffs had not established a right to recover upon an express contract; but he submitted to the jury the question of plaintiffs' right to recover on a *quantum meruit.* The following is from the charge to the jury:

"I do not believe that the passage of the resolution by the board of health was sufficient, being an alteration or change of a material part of the contract, to make it legal and binding. A new contract, of course, should have been entered into at that time by the plaintiffs and by the defendants. Well,

that was not done. If a brand new contract, which would have been the best way to have proceeded, was not entered into, it could have been done in this way, by resolution, but I believe that the resolution would have to be approved by the common council in order to change the original contract without entering into a new one, and that was not done. The limit also could not at that time be raised, because at that time the money was not available in excess of the $700,000 but the money was available, of course, and on hand to much more than cover the fees of the plaintiffs.  *  *  *

"The city contends that the plaintiffs are limited in what they can recover to three per cent. of that original amount of $700,000, and they claim that they have been paid that. I am rather convinced that as far as an express contract is concerned, perhaps that is so, but no law has been cited to me which says that a city cannot be liable on a *quantum meruit* for services actually performed in the same way that an individual or company can be. So, what I am leaving to you in this case is this: What is a reasonable amount for services that were performed by the plaintiffs?"

The plaintiffs had verdict and judgment for $42,183.56. The defendants are here by writ of error. There are 20 assignments of error, but the fundamental question is presented by defendants' claim that the sole power to bind the city by contract is vested in the common council; and under the charter provision above quoted the only contract that was binding upon the city or that the common council had power to make was that limiting the expenditure of this project to $700,000; and further, because of the charter limitations, the city could not become bound either by ratification or estoppel for an amount in excess of $700,000 incident to this undertaking. The plaintiffs, as above indicated, claim the right to recover on what they assert is an express

contract. This is on the theory that the city through its common council ratified by implication the action taken by the board of health on December 23, 1919. Further, the plaintiffs claim that even in the absence of an express contract they can recover on the *quantum meruit*. In their brief the plaintiffs say:

"We are aware of the fact that the city of Detroit cannot enter into contracts for the expending of money and for the construction of buildings unless the money is actually appropriated for that purpose. We are not concerned with the question of whether a contract on the part of the city of Detroit with a building contractor to erect a $1,700,000 worth of buildings when there was but $700,000 in the treasury for that purpose, would be valid. That is not the case before the court. Stratton & Snyder did not enter into any contract with the city of Detroit to erect these buildings; their work was to prepare plans for buildings, not which the city of Detroit expected to erect immediately, but which they might erect in the future, when the legal appropriations for these buildings had been made."

The plaintiffs' attempt to escape the provision in the Detroit city charter wherein it is provided as a condition precedent to the making of a valid contract of this type that the funds to meet the obligation shall be appropriated, by saying they are not concerned with the building contract, but only with the architects' fees, is not tenable. Their contract was a part of the building project and required them to obtain the bids for the work and to draw the contracts for construction. The total cost was limited to $700,000. Plaintiffs' testimony shows that they were fully advised from the beginning they were making plans and preparing for a building contract which would exceed to the extent of substantially $1,000,000 the limit placed upon them by the common council. Such a construction contract was exe-

cuted with plaintiffs' full knowledge. According to the testimony given by the plaintiffs, the smallest working unit that could have been constructed under their plans and specifications would have cost more than $1,000,000. It was with plaintiffs' knowledge that the board of health attempted by its action to remove the limitation of $700,000 from the contract which the common council had approved. Under the charter provisions the attempted modification of the contract was not valid without the approval of the common council. The board of health did not have the power to enter into a contract that would bind the city; and its attempted action of December 23d did not alter the contract already made with the plaintiffs. Clearly there was no express contract which bound the city beyond the amount of $700,000, because no one who had power to bind the city had entered into such a contract.

But, the plaintiffs insist that, because the city through its officials, including the common council, knowingly accepted the services rendered by the plaintiffs, the liability of the city to pay results, notwithstanding charter limitations. To accept this proposition is to eliminate from the city charter the express limitation upon the power to bind it by contracts of this character. Neither the city officials nor the courts have the right or power to do this. Relative to the contention that the city should be held on the implied contract, we must not overlook the fact that because the necessary funds had not been appropriated the city through its common council had no power to make a valid contract which would obligate it incident to this project for more than $700,000; and not having the power to make an express contract, it could not become liable on an implied contract on the theory of ratification or estoppel. *Wrought Iron Bridge Co.* v. *Township of*

*Jasper,* 68 Mich. 441; *Daniels* v. *Long,* 111 Mich. 562. For this reason numerous cases cited in the plaintiffs' brief are not in point. It may seem hard to hold that the city can have the benefit of plaintiffs' services and not be bound to pay therefor. But it is an unavoidable consequence to those who attempt to contract with municipalities in total disregard of the limitations placed upon their powers, and which have been found necessary to safeguard the rights of their citizens. *Mackey* v. *Township of Columbus,* 71 Mich. 227. For cases where a like result has followed under similar circumstances, see *Black* v. *Common Council of Detroit,* 119 Mich. 571; *Geister* v. *School District,* 243 Mich. 357.

The plaintiffs assert in their brief that the defense that the city cannot be held liable beyond the amount of $700,000 because funds in excess of that amount have not been appropriated is not before us; claiming (1) this is an affirmative defense, of which no notice was given under the plea, and (2) that the question thus raised is not covered by any assignment of error. This question was brought into the cases incident to plaintiffs' claim of a right to recover on an implied contract, and surely that question was before the circuit court. This was the theory upon which the plaintiffs recovered. It is made a part of the record before us by the defendants' 14th assignment of error wherein complaint is made of the charge of the court which permitted recovery on the *quantum meruit.*

It conclusively appears from the record that the plaintiffs rendered their services under an express contract which specifically limited the expenditure to $700,000; and because of the express contract, they cannot recover upon the *quantum meruit* an amount in excess of that specified in the written agreement. In *Carpenter Construction Co.* v. *City of Detroit,* 229

Mich. 285, which presented the question of the validity of a construction contract under these same provisions of the Detroit city charter, Justice WIEST quoted section 6 of chapter 7, title 6 of the charter, which provides: ''All contracts hereafter made and entered into contrary to or not authorized by the provisions of this charter shall be void;'' and held that in dealing with the city one was bound to take notice of the charter provisions; and further:

''The work having been performed under the contract, and the contract having been performed by the city, plaintiff can make no claim to a *quantum meruit* right of recovery. The contract, carried out by both parties, covered the very matter now in litigation and plaintiff cannot recover as on an implied contract. We do not understand that plaintiff seeks to recover extra compensation. No such recovery would be permissible.

''Article 16, § 3, of the Constitution of this State provides:

'' 'Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered or the contract entered into.' ''

The present case should have been disposed of in the circuit court by granting defendants' motion that the jury be directed to render a verdict for $879.02 in favor of the plaintiffs. The judgment entered in the lower court must be set aside. The case will be remanded for that purpose and with the direction to enter a judgment for the plaintiffs in accordance herewith.

FEAD, FELLOWS, WIEST, CLARK, McDONALD, POTTER, and SHARPE, JJ., concurred.