A. J. SMITH CONSTRUCTION CO. *v.* CITY OF MARINE CITY.

1. MUNICIPAL CORPORATIONS—PAVING CONTRACT—EXTRAS—QUESTION FOR JURY.

Submission to jury as issue of fact question of whether city authorized engineer paid by State and county but also supervising work for city to orally employ plaintiff to do certain extra work in connection with principal paving job under written contract *held,* without error.

2. SAME—FINDING OF JURY—ESTOPPEL.

Finding of jury that engineer in charge of paving construction for State, county and city, although not paid by city, was authorized to orally employ plaintiff to do extra work in connection with principal paving job under written contract and bind city therefor *held,* justified by circumstances of the case, where city had paid for other extra work and materials so ordered in connection with same paving contract, although there was no showing of express authority in said engineer to do so.

3. SAME—PRINCIPAL AND AGENT—DELEGABLE POWER—ESTOPPEL.

· City is estopped from denying power of its agent to exercise delegable power where its exercise has been approved by city over a long period of time.

4. SAME—RETENTION OF BENEFITS—STATU QUO—INTRA VIRES.
    Municipal corporation is bound to pay for extra work and material not ordered in writing as provided in principal paving contract, which it receives and retains, is *intra vires,* and where it is unable to place plaintiff *in statu quo.*

Appeal from St. Clair; Robertson (William), J. Submitted April 25, 1934. (Docket No. 46, Calendar No. 37,624.) Decided June 4, 1934.

Assumpsit by A. J. Smith Construction Company, a Michigan corporation, against City of Marine City, a municipal corporation, for work and materials furnished. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*Rudolph J. Inman,* for plaintiff.

*E. Newell DeGurse,* for defendant.

NORTH, J. In 1920 and 1921 plaintiff was engaged as a contractor in paving State trunk line highway 27–3 in St. Clair county. The paving operation extended through defendant municipality, a fourth-class city. A written contract was entered into between plaintiff and defendant incident to paving in the streets of defendant city. The central portion of this pavement, a strip 20 feet in width, was constructed under a separate contract with State and county highway authorities. The contract between the parties to this suit provided for paving additional widths, gutters, curbs, etc., in the streets of defendant city. Incident to the city's paving 1,070.6 feet of valley gutter was constructed 30 inches in width instead of 18 inches as provided in the written contract. This resulted in a charge for extra work and material totaling $877.89. While defendant paid in full the balance claimed by plaintiff, it declined to pay this item and suit was brought to recover therefor. The defense urged was that this

extra work was not ordered by the defendant city or by any person authorized to do so in its behalf. On trial before jury plaintiff had verdict and judgment for the above amount and accrued interest. Defendant has appealed.

Appellant urges as the two reasons in support of its appeal the following:

1. The trial court erred in submitting as an issue of fact to the jury the question as to whether defendant city authorized the engineer who supervised this highway construction to employ the defendant to perform the extra work for which recovery is sought. and to bind defendant to make payment therefor.

2. The trial court also erred in instructing the jury that this engineer was the man directly in charge of this work on the ground for the St. Clair county road commission, the State highway department *and the city of Marine City.*

As to the first of these alleged errors appellant claims there was no testimony tending to sustain an affirmative finding and the court should have held as a matter of law that the engineer was not so authorized. As to the second alleged error appellant also claims there was no testimony tending to show that the engineer was in charge for the city of Marine City, or at least there was a conflict of testimony which presented an issue of fact for the jury on this phase of the case.

The questions presented on appeal necessitate liberal quotation from the testimony. Mr. A. J. Smith, president of the plaintiff company, testified on cross-examination by defendant's counsel in part as follows:

"*Q.* When there was some addition to be made to the original contract, the original specifications, who did I understand you to say made this agreement?

"*A.* Most all of the contracts on this particular job was made with Mr. Parker; his order was given to our superintendent.

"*Q.* Mr. Parker, the engineer for the county and the state highway department?

"*A.* Engineer—representative of Marine City also. * * *

"*Q.* Well, you do not know that he represented Marine City?

"*A.* They paid for everything under his orders; catch basins and everything else that was changed on the order they paid for on Mr. Parker's orders. * * * I am familiar with the original specifications and the terms of the contract. On this change in valley gutter from 18-inch width to 30-inch width we had no written order from the commissioner as provided by the contract that I know of. We very seldom had a written order for any of those things. It was verbal. * * * I think your father (Thomas E. De-Gurse, then the mayor, who, together with the city clerk, executed the paving contract) was the first man to give me those instructions (that Mr. Parker was representing the city of Marine City). * * * I am quite sure your father was the first man who told me Mr. Parker was going to be in charge of all the work. * * * Mr. Parker contracted for several things the year before and they always paid them all. We never had any question about it."

Mr. William W. Cox, engineer manager of St. Clair county road commission, testified:

"The supervision of this work through the city of Marine City was handled directly on the job by Ben Parker who was in the employ of the county and in turn an employee of the State through the county to look after the State work. * * * I know that, generally speaking, they would outline the type of work they wanted done and we would pass that work on to the engineer, Mr. Parker, who would carry it out. * * * Oh, there were changes made. * * * Well, if any changes were made, they would come

first to the attention of Mr. Parker and he would. make a recommendation to me and if I approved of the recommendation, why, he would go ahead and do the work. * * *

"*Q*. Did you, in making any changes in the specifications, at any time issue any orders in writing?

"*A*. Not to my knowledge, no. * * * I know of my own knowledge there was additional extra work that was put in at that time that was paid for by the city of Marine City. * * * They probably had some voice in it (the extra cost), and usually it was discussed, as I said, first with our engineer, Mr. Parker, and then it came to me in the form of a recommendation and if I approved the work was proceeded with. * * * Mr. Parker was in the employ of the county road commission and was placed under my supervision and as the State was paying for the 20-foot central portion of the pavement he also represented the State. I would think it was thoroughly understood between all three parties with the city and county and State that Mr. Parker was supervising the work that was done under that contract and included in the changes, of course. * * * I think it was generally understood between all three parties, that is, the city, the county and State, that Mr. Parker would supervise the work that was done under that contract. * * * I know Mr. Parker represented the city so far as supervising the city's portion of the work is concerned. Marine City did not pay Mr. Parker. These services were gratis so far as the State and county were concerned to the city of Marine City."

The engineer in immediate charge of this work, Benjamin L. Parker, testified that besides the change in the contract work which gave rise to this suit there were other changes and other extra work; that with the approval of his superior, Mr. Cox, he recommended such changes. Upon being asked whether he obtained approval of the city council he

testified that he attended several of the sessions, practically all of them, and had numerous matters up with the council but that he could not say whether this particular change in the work was discussed with the council. He further testified that so far as he knew the city at no time made complaint concerning extras which he authorized. On cross-examination he testified:

"I was never engaged by Marine City to represent it as its engineer on this particular project. * * * I was to direct that project in its entirety; some of its parts were to be paid for by Marine City."

Considering all the testimony only one interpretation can be given to Mr. Parker's statement that he "was never engaged by Marine City." Beyond cavil he meant he was not employed under pay by the city, a circumstance which in no way impaired his right to represent and bind the city if otherwise so empowered. There is no dispute in the testimony as to the extra work for which this suit is brought having been ordered by Mr. Parker, nor is there any dispute in the testimony that he was supervising this work in behalf of the city as well as of the State and county. There was no error on the part of the trial court in so charging the jury.

In determining whether there is testimony from which the jury could find that the defendant could be and was bound to pay for extras ordered by Mr. Parker it is of importance to bear in mind that this work for the city was in progress during a portion of two years and that the work was carried on in the manner indicated by the above testimony until finally completed. It is almost a necessary conclusion that defendant was fully advised of the manner in which Mr. Parker was operating in its behalf and

that it approved of his so acting. On numerous occasions, without complaint so far as the testimony shows, he ordered extras which were paid for by defendant. It is also important to bear in mind that the validity of this contract or the authority of the common council to enter into it is not questioned. The defense of *ultra vires* is in no way involved. The question presented is whether in the absence of a showing of authority expressly given to Mr. Parker by the defendant to deviate somewhat from the written contract and bind the defendant by resulting obligations, that power may be fairly inferred from the circumstances disclosed by the testimony in this case. We think it may be and that the jury was justified in so determining. Safeguarding the interests and rights of a municipality incident to such construction almost necessarily involves delegation of power of this character to some representative. And where the exercise of such delegated power is approved by the municipality over a long period of time, it is only just to hold that the municipal corporation is estopped from denying the power of its agent, the same as would be held in case of a private corporation or an individual. Nor can it be urged successfully as a defense herein that the defendant municipality is not obligated because the extra work and material were not ordered in writing, as provided in the principal contract. *Commercial State Bank of Shepherd* v. *School District No. 3 of Coe Township, Isabella County,* 225 Mich. 656; *Park* v. *City of Milwaukee,* 180 Wis. 278 (192 N. W. 1012). The municipality has received and retained that for which compensation is sought and is unable to make restitution or place plaintiff *in statu quo.* Both morally and legally defendant is obligated and should pay.

Appellant cites and in part relies upon *Stratton* v. *City of Detroit*, 246 Mich. 139, and *Salzer* v. *City of East Lansing*, 263 Mich. 626. These cases are not in point for the reason that they adjudicated attempts to enforce alleged contracts that were *ultra vires* and by which the defendant municipal corporations were not bound. In the instant case the asserted obligation is *intra vires* and decision is controlled by such adjudications as *Carey* v. *City of East Saginaw*, 79 Mich. 73, 76, where it is said of city officials:

"They receive it (sewer pipe), and place it in the sewer, they are estopped from setting up a defense that they themselves have neglected to procure a written contract, drawn by the city attorney, in accordance with the bid and award."

"In an action on a contract which is not *ultra vires*, a municipal corporation may not shield itself behind a defense based on the manner in which the contract was made, and retain the benefits of the contract, without tendering at least a reasonable compensation for the benefits received." *Webb* v. *Township of Wakefield* (syllabus), 239 Mich. 521.

See, also, *Coit* v. *City of Grand Rapids,* 115 Mich. 493, and *L. W. Kinnear, Inc.,* v. *City of Lincoln Park,* 260 Mich. 250.

Plaintiff made a case for the jury and the circuit judge ruled correctly in denying defendant's motion for a directed verdict at the close of plaintiff's proofs. The record discloses no reason for disturbing the judgment entered. It is affirmed, with costs to appellee.

Nelson Sharpe, C. J., and Potter, Fead, Wiest, Butzel, Bushnell, and Edward M. Sharpe, JJ., concurred.