740

STANDARD TRANSFORMER COM-
PANY, an Ohio corporation,
Plaintiff,

v.

CITY OF DETROIT, a Michigan munici-
pal corporation, Defendant.

No. 15019.

United States District Court
E. D. Michigan, S. D.

Dec. 19, 1956.

Dickinson, Wright, Davis, McKean &
Cudlip, Detroit, Mich., for plaintiff.

Paul T. Dwyer, Corp. Counsel, John
R. McKinlay, Asst. Corp. Counsel, De-
troit, Mich., for defendant.

PICARD, District Judge.

Plaintiff sues to collect the sum of $3,-
964 allegedly owed by defendant pursuant
to a contract for the manufacture and
sale of two electric power transformers.

Stipulated Findings of Fact.

On March 23, 1951, plaintiff, among others, submitted bids for the manufacture, delivery and installation of two power transformers, in response to an advertisement published by defendant. Plaintiff was the lowest responsible bidder and on May 1, 1951, the parties entered a contract, the important provisions of which were as follows:

(a) As to price:

The transformers were to be delivered for $50,293, provided that,

"These prices are subject to adjustment as follows: The billing price will be that in effect at the time of shipment, any increase being limited to ten percent,"

(b) As to time of delivery and completion:

" * * * Transformers shall be delivered not later than December 15, 1951."

This was modified by another provision that delivery date was set at August 10, 1952, and

(c) A provision that if any delay necessitated extension of time plaintiff was to notify defendant within 48 hours satisfying defendant that such delay was unavoidable.

It is also well to mention that defendant was as cognizant of the causes for delay as plaintiff, particularly as to the Korean War and shortage of steel, but made no complaint.

Despite these provisions the transformers were not delivered until August 17, 1953, over one year after the due date, and were not put into operation until the spring of 1955. And during preliminary steps each party blamed delay on the other—plaintiff claiming that intervention of the Korean War, shortage of steel and defendant's failure to furnish final drawings and specifications caused the delay. Defendant denies that either event caused the delay.

Even though delivery was delayed for over a year, plaintiff never gave defendant the required notice and the City never complained about either the delay or failure to give such notice.

In any event on May 19, 1953, there was an industrywide increase in the price of power transformers which amounted to about 7.75 per cent. Following this and on May 25, 1953, plaintiff wrote defendant informing it of the price increase and of the plaintiff's intention to make delivery at the increased price. Defendant admits that it received this letter but made no reply. On August 17, 1953, the transformers were delivered accompanied by an invoice reflecting the price increase of $3,964. Defendant accepted delivery but made no mention or objection to the price increase.

Defendant has paid the sum of $50,293 but refuses to pay the additional sum of $3,964 which represents the price increase which occurred after May 19, 1953.

It is the City's contention that although the contract permitted a 10 per cent price increase, any such increase in order to become allowable, must have occurred prior to the original delivery date of August 10, 1952, and that to hold otherwise would permit plaintiff to profit by its own wrong.

Plaintiff contends that there is no such limitation in the 10 per cent increase but that defendant having accepted the transformers with full knowledge of all the facts is now estopped to deny liability for the price increase.

It is undisputed that delivery under the contract was due August 10, 1952 and that no price increase occurred before that time. It is also undisputed that plaintiff had a duty to notify and satisfy the City if any delay occurred and that it failed to do so. Thus while plaintiff allegedly failed to abide by the contract in two respects, defendant offered no objection to the breaches at any time, and accepted performance long after it was due.

Conclusions of Law.

■ There was, of course, no written modification of the original agreement. But none was necessary, since that contract of itself provided for both the in-

crease in price and extension of time for performance. This was not an ultra vires contract, Stratton v. City of Detroit, 246 Mich. 139, 244 N.W. 649, but one which the City could legally make, so both the State statutes and charter requirements were met.

■ But evidently the City felt that plaintiff had not breached the agreement or, that any such breach was infinitesimal. Furthermore, the delay presumably fitted right in with plans and needs of the City since it did not make use of the transformers until a long time after it did receive them. We hold that if one party is certain that the other party has breached its contract the former is not obliged to perform further. One cannot sit back and watch the other party breach a contract and then, while accepting the fruits of that breached contract, cunningly and with malice aforethought, aim at recision if and when it suits its convenience or pocketbook to do so. Accepting the "goods" under such circumstances calls for payment of the "price". And in the case at bar conduct of both parties really legally extended the time for performance, Jacob v. Cummings, 213 Mich. 373, at page 378, 182 N.W. 115, at page 117, which included liability to the City for any increase in the price of these transformers. Specifically this is demonstrated by two incidents. First, on May 25, 1953, when informed of the price increase and that plaintiff expected defendant to pay the long price, defendant did not object; and second, on August 17, 1953, when defendant accepted delivery it did so also without objection even though it received at the same time invoices where the increase in price was reflected. In our opinion defendant's refusal to pay and denial of liability months after it accepted delivery at which time of delivery it was in possession of all necessary facts, came much too late. See Ruggles v. Buffalo Foundry & Machine Co., 6 Cir., 27 F.2d 234.

[5] We have also given careful study and consideration to defendant's contention that it would be illegal for the City to pay this extra money. We cannot agree. The extension of date of delivery and payment of price were part of the contract and while the doctrine enunciated in Stratton v. City of Detroit, supra, does enjoin the consummation of an ultra vires contract the decision in A. J. Smith Construction Co. v. City of Marine City, 267 Mich. 367, 255 N.W. 209, enunciates the doctrine that must prevail here, where the contract was not ultra vires. A municipality cannot accept the benefits of performance and then set up violation of its charter, or council procedure, as defense for refusal to pay.

We hold that plaintiff is entitled to recover the sum of $3,964 with interest.