## Ives *v.* Kimball.

Under the act of April 12, 1827, Laws 1833, p. 281, the record of a deed executed and acknowledged in the state of New York, in conformity with its laws, with the acknowledgment certified by the officer taking it, in his official capacity, is evidence, without proof of the official character of the person taking the acknowledgment, or the genuineness of his signature.

A deed described a piece of land, as all that tract or parcel of land situate in the town of Logan, county of Lenawee, and territory of Michigan, being known and distinguished as the east half of the north west quarter of section *twenty one*, in township number *twenty six* south, of range number *three*. There was no surveyed township number *twenty six* in Logan. *Held*, that the number of the township might be rejected, as repugnant to the other parts of the description. And, it appearing from the act organizing the town, that there were two sections numbered *twenty one* in the town, corresponding with the description in the deed, one in surveyed township numbered six, and one in surveyed township numbered seven, both in range *three* east, the same was held not to be a patent ambiguity, although the court was bound judicially to take notice of the act organizing the town, and that parol evidence of surrounding circumstances and collateral facts might be received to show which of the two sections was intended by the grantor.

A record made in October, 1847, by a probate court, of a decree of the same court made in February, 1837, admitting a will to probate, is good evidence of the probate of the will.

A certificate of acknowledgment to a deed described it as the *foregoing mortgage*. *Held*, a clerical error, and that the certificate was sufficient.

To entitle a tax deed given in 1838, to be received as evidence of title, the regularity of the proceedings prior to the tax sale must be shown.*

Variance.

Error to Lenawee Circuit Court

*Cooley and Bills*, for plaintiff, in error.

*Tiffany and Beaman*, for defendant, in error.

---

* The tax was levied and the land sold under the act of April 22, Laws of 1833, p. 96, sec. 15. The law has since been changed a number of times. Vide *note* to Scott v. Detroit Young Men's Society's Lessee, 1 Doug. Mich. R. 121, and R. S. 1846, p. 114, sec. 82.

*By the court*, GREEN, J. Several questions of considerable import-ance are presented by the record in this cause, and which will be exam-ined in the order in which they are presented in the assignment of errors.

First: Did the judge who tried this cause in the court below, err in admitting in evidence the record of the · deed from Daniel Hunt and Helen his wife, to Cornelius C. Bogart, without further evidence of its due execution and acknowledgment?

The deed purports to have been executed in February, 1834, and to have been acknowledged on the 10th day of that month, in Niagara county, New York, before Daniel Van Horn, one of the judges of the court of common pleas of said county. The statutes of the state of New York, in force at the time of the execution and acknowledgment of the deed, were introduced in evidence, by which it appeared that it was executed and acknowledged, and certified by the proper officer, in conformity with said statutes.

It was objected that the record was not admissible in evidence, un-less it was also proved that the person before whom the acknowledg-ment purported to have been taken, was such officer as he represented himself in his certificate to be, and that his signature was genuine; and also that the register had no authority to record the deed, without evi-dence that it was executed and acknowledged according to the laws of the state of New York, and that such evidence should appear upon the record. ·

By sec. 7 of the act of April 12, 1827, Laws 1833, p. 281, which was in force at the date of the deed, it is provided, " That all deeds and conveyances of lands, tenements and hereditaments, situate, lying and being within this territory, which shall hereafter be made and execu-ted in any other territory, state or country, whereby such lands, tene-ments or hereditaments shall be conveyed, in whole or in part, or other-wise affected or encumbered in law, shall be acknowledged, and proved and certified, according to and in conformity with the laws and usages of the territory, state or country in which such deeds or conveyances were acknowledged or proved, or in which they shall be acknowledged or proved: and all such deeds and conveyances are hereby declared effectual and valid in law, to all intents and purposes, as though the same acknowledgments had been taken, or proof of execution made,

within this territory, and in pursuance of the laws thereof: and such deeds and conveyances, so acknowledged or proved as aforesaid, may be admitted to be, and shall be, recorded in the respective counties in which such lands, tenements or hereditaments do or may lie."

By the 6th section of the same act, the record of every deed, conveyance or other writing, which, by virtue of that act, should be entitled to be recorded, might, when so recorded, be read in evidence in any court of the said territory, without further proof.

The record, and not the original deed nor a transcript of the record, having been offered in evidence, the *only material consideration* involved in this question is, whether the deed was properly recorded. Had the deed been acknowledged within the territory of Michigan, the certificate of acknowledgment in due form, purporting to have been made by a proper officer, would unquestionably have been sufficient evidence of the official character of the person taking the acknowledgment, and of the genuineness of his signature, to entitle it to be recorded. Such has been the uniform construction of this statute, and its correctness has never been questioned to my knowledge.

Did the legislature intend to give the same effect to a certificate of acknowledgment of a deed in another state? I see nothing in the statute itself to indicate any other intention. · It contains no provision authorizing the register to take proof of the official character of the person taking the acknowledgment, nor of the genuineness of his signature, nor of the conformity of the execution and acknowledgment to the laws of the state or country in which the deed was executed. Even if such authority could be implied, the register, not being authorized or required to make any record of such proofs, no record thereof would be evidence, if made by him; and it would be presumed, in the absence of any evidence to the contrary, that he had done his duty as a public officer, and taken the necessary proofs before recording the deed.

The case of Lessee of Livingston *v.* McDonald, 9 Ohio R. 168, seems to be in point upon this question. That was an action of ejectment, and the plaintiff, amongst other evidence, offered a certified copy of a deed from John Cleve Symmes to James Henry, proven by one of the subscribing witnesses before Reynold Keen, who certified that he was one of the associate judges of the court of common pleas of the *city*

and county of Philadelphia. The deed was recorded in Hamilton county, while Butler, in which the land in question was situated, constituted a part of that county. It was objected to on the trial, on the ground that the official character of Keen was not sufficiently shown, and was rejected by the judge. The supreme court, on a motion for a new trial, held, that the deed was properly recorded, and that the certified copy of the record was competent evidence, and granted a new trial on the ground that it was improperly rejected. The law of Ohio, in force at the time when the deed from Symmes to Henry was executed, was substantially the same as that of 12th April, 1827, before referred to.

Second: Did the judge err in admitting parol evidence of the intention of Daniel Hunt to convey the premises in question to Cornelius C. Bogart, and to explain and give effect to said deed?

The description contained in the deed from Hunt and wife to Bogart, is as follows: " All that tract or parcel of land situate in the town of Logan, county of Lenawee and territory of Michigan, being known and distinguished as the east half of the north-west quarter of section twenty-one, containing eighty acres, and the north-west quarter of the north-west quarter of section number twenty-one, in township number twenty-six south, of range number three, containing in all one hundred and twenty acres of land, be the same more or less."

The township of Logan, as organized by an act approved April 12, 1827, (Laws of 1827, p. 359,) embraced " the south half of the surveyed townships numbered six, in ranges one, two, three, four, five, and townships numbered seven, in one, two and three," in the county of Lenawee, south of the base line, and east of the principal meridian: and such appears to have been the extent of the township of Logan at the date of the deed.

The plaintiff, upon the introduction of the record of the deed in evidence, offered to prove, by parol, that there was no such township as *twenty-six* in Logan; which proof was objected to, on the ground that the fact proposed to be proved appeared by the statute, of which the court would take judicial notice. The act organizing the township of Logan is a public statute, and, as such, the courts of this state are bound to take judicial notice of it; and it follows, inasmuch as the number of the surveyed townships embraced in Logan are specified in the act, that the

court must judicially take notice that no township numbered *twenty-six* is included within its limits.    This fact, then, need not have been proved: but as the proof of it could not tend either to settle or unsettle any thing affecting the case, the admission of it cannot be regarded as error. The court being cognizant of this fact, and it being conceded that there was no surveyed township numbered twenty-six in the county of Lena-wee, nor within the territory of Michigan, it is at once apparent that this call in the deed is repugnant to every other portion of the description.

The other portions of the description call for the east half of the north-west quarter of section number twenty-one, range number three, in the township of Logan, county of Lenawee and territory of Michigan: all of which is perfectly consistent.    The number of the township, then, it seems very clear, must have been mistaken in the deed, and being false, it must be rejected.    But this does not, necessarily, render the deed void.

In the case of Boardman and others *v*. The Lessees of Reed and Ford *et al.*, 6 Peters 345, Mr. Justice McLean, delivering the opinion of the court, says: "The entire description in the patent must be taken, and the identity of the land ascertained by a reasonable construction of the language used.    If there be a repugnant call, which, by the other calls in the patent, clearly appears to have been made through mistake, that does not make void the patent."    In that case, the land was described in the patent as lying in the county of Monongalia, and further described by reference to natural monuments, and it apeared that the land described by the monuments was in the county of Harrison, and not in Monongalia; and that part of the description which related to the county was rejected, and effect given to the patent.

In the case of Stringer and others *v*. Lessee of Young *et al.*, 3 Peters 320, the same question arose upon a similar patent, and Chief Justice Marshall, delivering the opinion of the court, says, that the "misnomer of the county must admit of explanation: and if explanation can be received, the patent is not absolutely void."

The question, in the case of Loomis *v*. Jackson, 19 John. R. 449, arose between a party claiming under a mortgage, and a subsequent purchaser from the mortgagor.    In the mortgage, the land was described as being a part of lot No. 51: in the deed, as being a part of

lot No. 50. The description in the deed and mortgage were the same in every respect, except that the deed expressed the true number of the lot. Both instruments contained other calls from which the land could be identified, and the court rejected the false number in the mortgage, and held it valid.

Indeed, the doctrine, that "if there be certain particulars sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance false or mistaken, will not frustrate the grant," accords too plainly with " the suggestions of good sense and the dictates of morality," ever to be seriously questioned.

- But in order to give effect to the deed in question, it is necessary to determine whether a sufficient description remains from which the land intended by the grantors to be conveyed, can be ascertained. By a reference to the statute under which the township of Logan was organized, it appears that the south half of township numbered six, and township numbered seven south, both in range three east, were embraced in Logan: and there are, consequently, two sections twenty-one, alike corresponding with the description in the deed—and there is nothing upon the face of the deed which shows which section was intended. It is therefore insisted that the description presents a *patent* ambiguity, which cannot be explained by parol evidence, and that the deed is, therefore, void for uncertainty. This ambiguity, it must be observed, does not arise from the equivocal character of the language employed by the grantors to express their *intention*, but from a fact which is not at all apparent upon the face of the instrument; and whether that fact be judicially known to the court, or be shown by parol evidence, I conceive to be entirely immaterial, and if so, then this is precisely the familiar case of a *latent* ambiguity, which may be explained by parol. It must be admitted at once, upon a bare statement of this case, that if parol evidence is legally admissible for that purpose, it might be very easily determined which of the two sections twenty-one was intended. There is no more useful, just and practical rule of law, than that which admits evidence of surrounding circumstances and collateral facts, within certain well defined limits, for the purpose of enabling courts to ascertain and carry into effect the intention of contracting parties. The cases in which this rule has been applied, are almost innumerable.

In the case of Fish *v.* Hubbard's administrators, 21 Wendell 651, the action was upon a covenant executed by the intestate, whereby he agreed to furnish the plaintiff " with *water out of the mill dam* sufficient to carry *the fulling mill and carding machine* at all times, except either in drought in summer, or the usual times of freezing in winter, and at all times to have such a share as is sufficient to carry *one wheel* when either of the wheels of *the grist mill and saw mill* are running."

Mr. Justice Cowen, delivering the opinion of the court, says: " The learned judge at the circuit thought the description of the property in the covenant so entirely uncertain, that the instrument was inoperative and void. And it is clearly so, if we are bound to stop with reading it, and cannot go beyond the face of the contract in search of its meaning." The court in that case, after a very elaborate review of the authorities, including Lord Bacon's rule as to ambiguities, decided that the extrinsic or collateral facts offered in evidence at the trial to show what *mill dam, saw mill* and *grist mill,* &c., were intended by the intestate, were improperly rejected, and awarded a new trial.

Mr. Greenleaf, in his valuable treatise on the law of evidence, section 300, remarks, that " the patent ambiguity of which Lord Bacon speaks, must be understood to be that which remains uncertain to the court, after all the evidence of surrounding circumstances and collateral facts, which is admissible under the rules already stated, is exhausted;" but that " if the court, placing itself in the situation in which the testator or contracting party stood at the time of executing the instrument, and with full understanding of the force and import of the words, cannot ascertain his meaning and intention from the language of the instrument, thus illustrated, it is a case of incurable and hopeless uncertainty, and the instrument, therefore, is so far inoperative and void."

After a careful examination of all the authorities cited by counsel, and many others upon this point, I have no doubt this was a proper case for the reception of parol evidence to show which of the two sections number twenty-one, in range three, in Logan, was intended to be conveyed by the description in the deed.

It appears from the bill of exceptions, that Hunt was allowed to testify directly, that it was his *intention* to convey to Cornelius Bogart the land in question. Had this been the only evidence given to the jury upon that point, or had there been any contradictory evidence, or any

ground for doubt from the evidence of surrounding circumstances and collateral facts, independent of this direct testimony of *intention*, perhaps the judgment should be reversed for this cause. But is there any probability that the jury *might* have been influenced by it in making up their verdict? It appeared that Hunt owned the land in question at the time of the conveyance to Bogart, and that this was the land which he had agreed to sell to him. There was no evidence given or offered to show that Hunt owned any other land in Logan, corresponding with the description in the deed: and, in the absence of such evidence, it must be presumed that he did not. See Loomis *v.* Jackson, 19 John. R., before cited. These facts and circumstances impel the mind irresistibly to the conclusion, that Hunt intended to convey the land in question to Bogart, without any regard to the direct testimony of Hunt as to what he *actually* intended. The language of the deed itself implies that the grantor is the owner of what he grants, and, in connexion with the other evidence adduced, seems to me conclusive as to the intention.

Third: It is objected that the judge erred in admitting in evidence the record of the paper purporting to be the will of Cornelius C. Bogart. The will appears to have been regularly admitted to probate in February, 1837, but not recorded until October, 1847, upwards of ten years from the time of proving it: and it is insisted that, at the time the will was recorded, there was no law in force requiring such a will to be recorded, and that therefore the record was no evidence. Section 2, chapter 91, of the Revised Statutes of 1846, is as follows: "Every probate court shall be a court of record, and have a seal; and each judge of probate shall keep a true and fair record of each order, sentence and decree of the court, and of all wills proved therein, with the probate thereof," &c. The limited construction contended for by the counsel for the defendant in error, would, at each successive election and qualification of a judge of probate, leave many orders, decrees, wills, with the probate thereof, letters testamentary and of administration, &c., unrecorded, without any power in the new incumbent of the office to record them. This construction would do violence to the letter as well as the spirit of the statute, and is wholly inadmissible. The judge of probate is required to keep a true and fair record of each order of the *court*, and of all wills *proved therein*, with the probate thereof. When the record

has been made by his predecessor, it is his duty to preserve it; but if he find in the probate *court*, a will proved *therein*, and not recorded, it clearly becomes his duty to make a true and fair record of it. The court of probate for Lenawee county has existed since the organization of the state government, and the admission of a will to probate ten years ago, is as much an act of the court as if it had been done at the time the will and probate were recorded.

Fourth: It is also assigned for error, that the judge erred in admitting the record of the deed from Isaac Bogart to Redfield and Kimball in evidence; and it is claimed that this deed was not properly upon record, for want of a proper acknowledgment. The certificate of acknowledgment appears to have been made at the foot of the deed as follows:

" State of Michigan, county of Lenawee, ss.—Personally appeared before me the above named Isaac Bogart, to me known to be the person described as the grantor in the *foregoing mortgage*, and acknowledged that he signed, sealed and delivered the same for the uses and purposes therein mentioned. Also personally appeared Cynthia Bogart, who on a private examination by me, separate and apart from her husband, acknowledged that she executed the said *mortgage* free, without fear or compulsion from any one. Given under my hand at Adrian, the seventh day of November, 1845.      P. Morey,

         Notary Public, Lenawee Co."

The question arises upon the misnomer of the instrument. It is described as " the foregoing *mortgage*," in the certificate, instead of " the foregoing *deed*." The mistake is evident. It seems to have been a mere clerical error, and the instrument, at the foot of which the certificate was made, appearing to be clearly indicated, the certificate must be deemed sufficient.

Fifth: The deed from Hewit to Isaac Merritt and John Merritt was properly excluded. It was a tax title deed given in 1838, and no evidence was offered to show that the proceedings prior to the sale for taxes were regular. 1 Doug. Mich. R. 119; 2 *id*. 204; and Harr. Ch. R. 1.

Sixth: The only remaining ground of error insisted upon in the argument submitted is, that the judge erred in deciding that there was no variance between the trust set out in the declaration, and that shown in

proof. The trust set out in the declaration is, " to sell the said premises and apply the money which they should obtain from the sale of said land, to the payment of certain debts of said Bogart; and to pay the residue, after payment of said debts, to Cynthia Bogart, the wife of the said Isaac Bogart. In the declaration of the trust, proved on the trial, the grantees undertook, amongst other things, to pay to Elihu L. Clark the amount of two promissory notes purporting to be signed by Joseph Bailey; and it is claimed that it was not shown on the trial that the amount of these notes constituted a debt of Bogart. No other evidence appears to have been offered in reference to these notes, than what appears from the instrument declaring the trust. The fact that provision is made by Bogart for the payment of the notes, seems to me to imply that, though purporting to be signed by Bailey, they were either given to secure a debt of Bogart, or that he had in some way become obligated to pay them: and if this assumption be correct, then there is no apparent variance between the trust set out in the declaration in the cause, and that shown in proof. Even if the implication were otherwise, and the amount of these notes did not strictly appear to be an original debt of Bogart, yet his making provision for their payment renders it so far his debt as to satisfy the averment in the declaration.

Finding no error, therefore, in the record in this cause, the judgment of the circuit court therein must be affirmed, with costs to the defendant in error.

*Judgment affirmed.*