### KELLER *v.* PAULOS LAND COMPANY.

1. CONTRACTS—TENDER—INTEREST.

   Valid tender of payment in accordance with contract stops interest from running on debt from time of tender.

2. SAME—CERTIFIED CHECKS—PERFORMANCE—ACCEPTANCE OF TENDER.

   Offer of payment of money due under contract by certified check was valid tender, where refusal to accept tender was not based on fact that certified checks were offered.

3. SAME—TENDER—FINDINGS—EVIDENCE.

   Findings of trial court as to propriety of tender of money due on land contract will not be set aside where record supports findings made.

4. SAME—EASEMENTS—AMBIGUITY—DESCRIPTION.

   Trial court properly held that phrase "nonexclusive easement for purposes of ingress and egress" in land contract was ambiguous as to proper uses of easement where strip of land subject to easement was land-locked, the only access to it being across other property sold to buyer under contract.

5. SAME—AMBIGUITY—PAROL EVIDENCE.

   Oral testimony may be taken to determine the true intent of the parties in using ambiguous terms in a contract.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 52 Am Jur, Tender § 39.
[2] 52 Am Jur, Tender § 21.
   Tender by check, 23 ALR 1284, 51 ALR 393.
[3] 52 Am Jur, Tender § 49.
   Effect of tender of purchase money on rights as between vendor and vendee under land contract in respect of interest.  25 ALR2d 973.
[4, 7]  25 Am Jur 2d, Easements and Licenses §§ 21, 23.
[5]  17 Am Jur 2d, Contracts § 77; 30 Am Jur 2d, Evidence § 1016.
[6]  17 Am Jur 2d, Contracts § 276.
[8]  5 Am Jur 2d, Appeal and Error § 1010.

6. SAME—AMBIGUITY—CONSTRUCTION AGAINST DRAFTSMAN.
  Contract is construed most strongly against party whose attorney
  drafted instrument containing ambiguous terms.

7. VENDOR AND PURCHASER—EASEMENTS—AMBIGUITY—DESCRIPTION.
  Finding by trial court that phrase "nonexclusive easement" used
  in land contract by which vendors contracted to convey a "non-
  exclusive easement" over land adjoining that contracted to be
  sold was ambiguous and that it meant that purchaser should
  have right to use easement lands for parking *held,* proper, in
  case where testimony showed the purchaser thought that it
  included parking, and vendor's agent had promised parking
  in preliminary agreement.

8. COSTS—BRIEF.
  No costs are allowed where appellee, who prevails on appeal,
  filed no brief or appendix.

Appeal from Court of Appeals, Division 3, Hol-
brook, P. J., and Burns and Hoffius, JJ., affirming
Grand Traverse, Brown (Charles L.), J. Submitted
December 7, 1967. (Calendar No. 44, Docket No.
51,658.) Decided October 21, 1968.

5 Mich App 246, affirmed.

Complaint by Joseph Keller and Ethel Keller
against Paulos Land Company, a Michigan corpora-
tion, for balance due on land contract, interest, and
injunction. Judgment determining amount due, and
interest, and denying injunction. Affirmed by Court
of Appeals. Plaintiff appeals. Affirmed.

*James Thomson,* for plaintiffs.

DETHMERS, C. J. Plaintiffs' agent, acting under
power of attorney from them, executed and delivered
an option to defendant to purchase certain land
owned by plaintiffs in Traverse City. After the
description of the land in the option the agent, in

longhand, wrote, *inter alia,* "including 33 ft. easement along north line for parking". Plaintiffs also owned the land adjacent to and immediately north of that described in the option.

Shortly thereafter a land contract was entered into between plaintiffs and defendant for the sale by plaintiffs to defendant of the premises described in the option for $40,000, in which plaintiffs acknowledged a down payment of $15,000. With respect to the mentioned easement the contract contained the following language:

"with a nonexclusive easement for purposes of ingress and egress in connection with this aforesaid parcel of land, said easement being described as 33 feet lying north of said parcel of land, it being agreed that if seller in the development of his land north of said parcel of land desires an alley to be established for Front street, then such part of said easement as shall not be required for said alley shall revert to the seller, or his heirs, assigns, successors, or grantees."

The contract also granted the defendant purchaser the right to remove any or all of the three buildings on the land, provided that defendant should then pay on the contract balance a specified sum for each of them. In addition, the contract contained an acceleration clause authorizing plaintiffs, upon any default by defendant, to declare the entire unpaid balance due forthwith.

It appears that later defendant wrote to plaintiffs' attorney to the effect that before it would continue on further closing negotiations, it required that plaintiffs execute and deliver to defendant a supplement to the land contract permitting defendant to use the mentioned 33-foot easement strip for parking purposes; and, further, that upon receipt from plaintiffs of the supplement and a proper deed by

defendant's Traverse City bank, the latter would forward to plaintiffs a certified check for balance due on the purchase. Plaintiffs declined to execute the supplement.

The trial court, sitting without a jury, found that on September 29, 1962, defendant and its attorney visited the office of plaintiffs' attorney, where they were also present, and tendered a certified check for $25,000, the principal balance due, and another for $710.17, covering interest to that date, and demanded a deed, without demanding the mentioned supplement to land contract or that its provisions be incorporated in the deed; further, that plaintiffs refused the tender but did not object to its being in the form of certified checks rather than in cash. Defendant repeatedly thereafter attempted to obtain the deed without avail. Reasons for plaintiffs' refusal are not disclosed in the record. At no time prior to bringing this action did plaintiffs complain of defendant's use of the strip for parking purposes, nor did they complain of the sufficiency of the tender made by certified checks rather than cash, nor did they complain of the latter in their pleadings or otherwise until trial.

On August 3, 1963, plaintiffs brought this action. In their complaint plaintiffs allege that defendant did remove the buildings on the land as by the contract permitted but failed to make the requisite payments therefor on the purchase balance as in the contract required. Plaintiffs, therefore, declared the entire unpaid balance due, sought judgment for the $25,000 plus interest to date of judgment and an injunction restraining defendant from using the easement strip for parking purposes.

At trial it was agreed that the two questions to be decided by the court were:

1. Was a legal tender made to plaintiffs on September 29, 1962?

2. Were plaintiffs entitled to the injunction sought?

The question of validity of the tender on September 29, 1962, is obviously of concern to the parties only because it is determinative of whether interest on the contract obligation should cease to run as of that date or continue to run, as plaintiffs claim, until date of judgment. As relates to interest stopping as of date of lawful tender of amount due on the contract, in instances where purchaser is entitled to pay entire balance on or before specified due date, see *McDonald* v. *Houseman-Spitzley Corporation* (1930), 250 Mich 509.

The trial court held the tender legal and valid. It entered judgment accordingly for plaintiffs in the amount of the $25,000 balance due on the principal, together with the $710.17 interest due to date of the tender, all of which defendant conceded to be due, and the court denied the injunctive relief plaintiffs prayed for, with costs in favor of defendant. This was affirmed, on appeal, by the Court of Appeals.

In *Browning* v. *Crouse* (1879), 40 Mich 339, it was held that the tender of a check was a sufficient performance of a promise to pay contained in a composition agreement if no objection was made to the medium of payment at time of tender.

In *Hobart* v. *Vanden Bosch* (1932), 256 Mich 686, where refusal of tender of a check for the balance due on a stock purchase was made on other grounds but no claim was made that a more technically perfect tender, if made, would have been accepted at that or any subsequent time, the record showing that such a tender, if made, would not have been accepted, it was held that a further tender would have been idle and was not required in law.

The trial court found the facts in this case as to tender to be as described in *Browning* and *Hobart,*

above. The record amply supports the finding. Hence, there is no occasion for this Court, as there was not for the Court of Appeals, to set aside the findings of fact of the circuit judge. *Kevreson* v. *Michigan Consolidated Gas Co.* (1965), 374 Mich 465; *Schneider* v. *Pomerville* (1957), 348 Mich 49; GCR 1963, 517.1. Under those factual findings the court was correct on the law in holding that the said tender was adequate, legal, and stopped the further running of interest on the principal.

The dispute over the provision in the land contract for a "nonexclusive easement of ingress and egress" does not involve the question of the existence of an easement. Rather, the dispute over this easement concerns the scope or use to which the easement granted by the land contract may be employed. Plaintiffs' attorney contends that the purpose of the easement was to facilitate the future commercial development of the servient estate retained by the plaintiffs.

"*Mr. Thomson (attorney for plaintiffs):* This is the land right here, and down here this way, belonging to the Kellers, and if they develop this land up here for commercial purposes, and they seek to give this property as an alley, then this alley will extend all down through the easement as an alley for Front street, this way, for ingress and egress purposes only."

On the other hand, the defendant's attorney contends that, by virtue of its physical location, the only possible use of the easement was for parking purposes.

"*Mr. Zerafa (attorney for defendant): (Drawing on blackboard)* This property right here is owned by Drs. Beall and Weih—this portion right here, from this point north; and from this point east is owned by the Kellers. Now, the Kellers also owned this *(indicating)*. They agreed to sell this portion here

and to give this easement over this 33-foot strip here. This easement doesn't run out here to Garfield avenue. It can't go there, because there is a house right here that the Kellers live in. It can't go north, because this is the Jerico property, and there is a 33-foot strip here that belongs to Keller. There is the Jerico property over here. I ask this court— that easement says "for purposes of ingress and egress." This easement is for ingress and egress to what?

"*Mr. Thomson:* To Front street.   *   *   *

"*Mr. Zerafa:* I don't know what this mumbo-jumbo is that Mr. Thomson is giving us here; but how could this easement belong to the Kellers? They own that, and if they want to make an alley out of it, they can do it any time they want. They don't have to ask Mr. Paulos, or anyone. In addition to the sale of this property here for $40,000, they gave him an easement across this 33 feet by 207 feet. For what reason? For ingress and egress. To what? He can't go this way; he can't go that way *(indicating)*. He doesn't have a right to. And if they are going to dedicate this as an alley, we don't need that easement. This is Keller property here *(indicating),* and this is Keller property here, and this is Keller property here, subject to the easement he gave to the Paulos Land Company.

"Now, he says there was no talk about parking. What in the world can you use that for other than parking? You can't go anywhere on it. You have no right to cross anybody else's property. They say this is an easement to go to Front street. That is absurd. He has a right to go to Front street over his own property. That is why I contend this land contract is ambiguous as to this easement and, accordingly, we are entitled to show what was intended and why we asked for this easement."

Reference to the survey in the trial transcript (exhibit E) supports the defendant's position. The easement as described in the land contract is land-

locked. The only access to the granted easement as far as ingress and egress are concerned is over the defendant-grantee's own property. The only logical use to which an easement so situated could be put is either as a parking area or as part of a circular throughway coupled to drives to be extended over the property purchased by defendant from plaintiffs. Certainly, it was not a use of ingress and egress within the common legal meaning.

In the light of this ambiguous term in the land contract, the trial court properly permitted oral testimony to determine the true intent of the parties. See *McIntosh* v. *Groomes* (1924), 227 Mich 215.

The court correctly held that the ambiguous term was to be strictly construed against the preparer of the contract (see *Minkus* v. *Sarge* [1957], 348 Mich 415; *Michigan Chandelier Co.* v. *Morse* [1941], 297 Mich 41; *Olsen* v. *Fry* [1926], 234 Mich 233), and found the intent of the parties to be that parking rights were to be included in the conveyance.

Under the record-supported findings of fact of the trial court on this issue and the applicable rules, as just observed, the court was right in denying the injunction.

Court of Appeals affirmed. Appellee having filed no brief or appendix on this appeal, costs in this Court are not allowed.

KELLY, BLACK, T. M. KAVANAGH, O'HARA, ADAMS, and T. E. BRENNAN, JJ., concurred.