### GAMBLE v HANNIGAN

1. COVENANTS—BUILDING RESTRICTIONS—APPEAL AND ERROR.

Cases in which building restrictions have been imposed by covenants present such a wide difference in facts that few rules can be applied generally, and, in the main, each case must be determined on its own facts.

2. INJUNCTION—COVENANTS—BUILDING RESTRICTIONS—EQUITY.

An injunction, compelling the defendant to remove that portion of her home being constructed in technical violation of the governing building committee's permission granting an exemption from land use covenants, should not have been issued where the committee's permission contained erroneous geographical descriptions and the construction did not violate the essential purpose of the covenants, assurance of an unobstructed view of a lake by adjoining property owners.

Appeal from Oceana, Charles A. Wickens, J. Submitted Division 3 December 9, 1971, at Grand Rapids. (Docket No. 10737.) Decided February 23, 1972.

Complaint by David and Patricia Gamble and others against Eldora Hannigan to restrain the defendant from further construction of a porch on her home and to compel her to remove that portion of the porch already constructed. Judgment for plaintiffs. Defendant appeals. Reversed.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 165 et seq.

[2] 20 Am Jur 2d, Covenants, Conditions, and Restrictions § 312 et seq.

Personal covenant in recorded deed as enforceable against grantee's lessee or successor. 23 ALR2d 520.

*Hugh A. Loree* and *Gerald T. Graham*, for plaintiffs.

*A. Winton Dahlstrom*, for defendant.

Before: R. B. BURNS, P. J., and FITZGERALD and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. David and Patricia Gamble, as owners of certain land on Hart Lake in Oceana County, caused this land to be platted and recorded under the name of "Bloomfield Shores". On November 17, 1967, while still the sole owners of this property, Mr. and Mrs. Gamble executed and recorded a document entitled "Statement of Covenants, Restrictions and Conditions Regarding the Use and Occupancy of the Plat of Bloomfield Shores". Paragraph 4 of this document provides:

"4. No dwelling unit or part of any dwelling unit, or other structures, shall be located on any lot or building site nearer than 20 feet from the crest of the land approaching the lake, nor nearer than 30 feet from the front line of said lot as surveyed, nor nearer than 10 feet from any side lot line. The front line of any lot shall be deemed to be any lot line abutting upon any street in said plat. 'Dwelling house' or 'structure', as used in this paragraph, shall be defined to any extreme projection, including porches and eaves."

While defendant, Eldora Hannigan, was investigating the possibility of purchasing lot 12 of Bloomfield Shores from the Gambles, she was assured that, because of the nature of this lot, some concession would be made regarding the requirements of paragraph 4, *supra;* defendant was specifically concerned with the covenant requiring struc-

tures to be no nearer than 20 feet to the crest of the bank approaching the lake. Figure 1, *infra,* displays lot 12 of Bloomfield Shores, and the surrounding lots. Defendant's exhibit "A", an aerial photograph of the property in question, reveals that the crest of the bank is not accurately represented by figure 1. Actually, the bank follows a crescent-like course which closely approaches the lake in the center of lot 11, passes immediately in front of defendant's house on lot 12, and then approaches the lake again near the far side of lot 13.

Given the lay of the land, defendant's view of the lake would be interrupted by construction on the immediately adjacent property if she had to abide by the 20-foot set-back rule. Subsequent to defendant's purchase of lot 12 on May 15, 1968, the building committee (a group created by the covenants and empowered to alter them), on October 10, 1968, approved defendant's construction plan with the following special provision:

"The committee agrees that the owners [*sic*] North building line should not exceed beyond the point one foot South or back of the cement marker located 25' feet east of the NW Corner of Lot 12. The owner should consider maintaining a continuity of grade with lots 12 & 13."

The cement marker which the committee attempted to describe is located at the turning of the random traverse line on lot 12. If, by the "NW corner" the committee was referring to the intersection of the line dividing lots 12 and 13 and the lakeshore, the point described would be somewhere in the lake. If they were referring to the intersection of the random traverse line and the line dividing lots 12 and 13 as the "NW corner", the point described would be quite a distance closer to the lake than the actual location of the concrete marker. The committee's description of the location of the con-

crete marker was, to be charitable, slightly errone-
ous. When construction of defendant's home was
nearing completion, a dispute arose regarding the
porch (seen as the protrusion in figure 1).

The dispute culminated in a lawsuit; plaintiffs
prevailed and defendant was enjoined from build-
ing the porch and ordered to remove the already
completed portion; defendant appeals.

Figure 1. This drawing was constructed by first tracing the Plat
of Bloomfield Shores (Plaintiffs' Exhibit #1) and second, reducing
to scale and superimposing the lakeside face of defendant's house
in the appropriate position (taken from Plaintiffs' Exhibit #7).

This Court feels that the most sensible manner in which to resolve cases of this nature is to consider each case on its peculiar merits. As Judge R. B. Burns stated in *Altese* v *Neill*, 1 Mich App 437, 439–440 (1965):

"In *Polk Manor* v. *Manton* (1936), 274 Mich 539, the thrust of the opinion indicates that building restriction cases present such a wide difference in fact that, in equity, but few rules can be applied generally, and in the main each case must be determined on its own facts.

"And so they must. Each factor, though separately of little significance, must be weighed and considered; each a makeweight for one of the adversaries, until finally the balance of the scales of justice tip one way or the other."

While in cases of an equitable nature, such as this, this Court is not bound by the conclusions of fact made by the court below (the review here is *de novo*), it will not disturb them unless the Court is convinced it would have reached a different result had it been in the lower court's position. *Georges* v *Ballard*, 20 Mich App 554 (1969); *Rose* v *Fuller*, 21 Mich App 172 (1970).

In this case the trial court found that there is only one concrete monument on lot 12 of Bloomfield Shores and that defendant's porch extends beyond that marker in violation of the building committee's permission. With these conclusions of fact we agree. We do not, however, feel that these facts compel the result reached below. Given the building committee's inept description of the concrete marker's location and the fact that a significant amount of the construction of the offending porch has been completed, we are disposed to resolve this case on grounds other than the technical violation of the building committee's permission.

The Court chooses to look to the stated purposes behind the covenants and restrictions and then determine the impact of defendant's porch on the achievement of those purposes. The purpose of the covenants and restrictions, as stated in that document, are as follows:

"for the purpose of insuring the use of the entire Plat for single residential purposes, and for the purpose of preserving and improving the attractive features of the property in the community, and securing to each lot owner the full benefit and enjoyment of his home and property with no greater restrictions upon the use of such home and property than is necessary to insure the same advantages to other lot owners."

After reviewing the record and exhibits in this case, we have come to the conclusion that defendant's porch would not obstruct the view of the lake from adjoining property, as was claimed below, any more than pre-existing structures affect the view. The closest protrusion of defendant's porch toward the lake is behind a line formed by joining the northerly corner of the structure on lot 11, and the easterly corner of the structure on lot 14. Therefore, any future purchaser of lot 13 would be able to secure an ample view of the lake without obstructing the view from the pre-existing structures on lots 11, 12, and 14. On this basis we reverse.

Reversed. Costs to appellants.

All concurred.