*499 CAVANAGH, J.
{concurring in part and dissenting in part). I concur with the result of the lead opinion because I agree that plaintiffs’ request for relief should be granted. I write separately to clarify my view that the circumstances surrounding the easement’s creation show that it contains a latent ambiguity and that the original grantors intended to allow utility access to plaintiffs’ property through the central drive easement. I respectfully dissent, however, from the lead opinion’s holding that the Land Division Act (LDA) does not grant courts the power to alter substantive property rights.
I. INTENT OF THE ORIGINAL GRANTORS
I concur with the lead opinion’s conclusion that the original grantors intended plaintiffs’ property to have access to utilities through the central drive easement, and I would grant plaintiffs’ request for relief.[1] I also concur with the lead opinion’s conclusion that the restrictive covenant does not bar plaintiffs from building on their property.
As the lead opinion noted, the cardinal rule of interpreting deeds and plats is to effectuate the intent of the parties. Ante at 490-491. To effectuate this rule, in light of the principle of freedom of contract, this Court has generally observed that “[i]f the language of a contract is clear and unambiguous, it is to be construed according to its plain sense and meaning. ...” City of Grosse Pointe Park v Michigan Muni Liability & Prop Pool, 473 Mich 188, 197-198; 702 NW2d 106 (2005) (citation and quotation marks omitted). Where a contract is ambigu *500 ous, however, this Court may use extrinsic evidence to determine the intent of the parties. Id. at 198.
Extrinsic evidence may sometimes also be used to detect an ambiguity in a contract, depending on whether the ambiguity is latent or patent. Id. A patent ambiguity “ ‘clearly appears on the face of a document, arising from the language itself.’ ” Id., quoting Black’s Law Dictionary (7th ed). Extrinsic evidence is generally not necessary to detect a patent ambiguity. In contrast, a latent ambiguity “ ‘does not readily appear in the language of a document, but instead arises from a collateral matter when the document’s terms are applied or executed.’ ” Id. Where there is a latent ambiguity, extrinsic evidence may be used not only to resolve the ambiguity, but also to prove the existence of the latent ambiguity. Grosse Pointe Park, 473 Mich at 198. See also McCarty v Mercury Metalcraft Co, 372 Mich 567, 575; 127 NW2d 340 (1964); Ives v Kimball, 1 Mich 308, 313 (1849). In Ives, after explaining that a latent ambiguity may be shown by parol evidence, this Court highlighted the importance of this doctrine by stating that
[t]here is no more useful, just and practical rule of law, than that which admits evidence of surrounding circumstances and collateral facts, within certain well defined limits, for the purpose of enabling courts to ascertain and carry into effect the intention of contracting parties. The cases in which this rule has been applied are almost innumerable. [Ives, 1 Mich at 313.]
This Court has applied the latent ambiguity doctrine to give easement language a meaning that becomes apparent only in light of the surrounding circumstances. See Keller v Paulos Land Co, 381 Mich 355; 161 NW2d 569 (1968); McConnell v Rathbun, 46 Mich 303; 9 NW 426 (1881). Keller is particularly instructive in this case. In Keller, the parties disagreed over the *501 purpose of a “nonexclusive easement of ingress and egress,” where the easement was landlocked within the defendant’s property. Keller, 381 Mich at 360. The defendant argued that, in context, it was clear that the easement was only intended to be used for parking. Id. at 360-361. This Court concluded that the language was ambiguous because a landlocked easement is “not a use of ingress and egress within the common legal meaning,” and accordingly it was appropriate for the Court to use oral testimony to determine the true intent of the parties. Id. at 362.
Similarly, in this case, the surrounding circumstances show that there was a latent ambiguity; therefore, extrinsic evidence should be used to determine and effectuate the intent of the parties. The central and south drive easements were described in the deeds as “a non-exclusive right of way for driveway purposes.” “Driveway purposes” is not so unclear as to create a patent ambiguity. But the parties’ use of the south drive easement for utilities at the time the easements were created suggests that, as in Keller, the parties’ understanding of “driveway purposes” was not limited to its “common legal meaning.” Keller, 381 Mich at 362. Because there is a latent ambiguity, the court may look to extrinsic evidence to determine the intent of the parties. As explained in the lead opinion, extrinsic evidence shows that the grantors intended that the central easement could be used for utilities access for plaintiffs’ property. Therefore, I concur that plaintiffs should be granted relief.
II. LAND DIVISION ACT[2]
I respectfully dissent from the holding that the LDA does not grant courts the power to alter substantive *502 property rights. I think that the majority that reached that holding errs in addressing this issue in this case. I also think that its reasoning is flawed and that its conclusion is too hroad.
Most importantly, I do not think that it is necessary for this Court to reach this issue in this case. The lead opinion states that “[i]n this case, the LDA did not create new substantive property rights when the circuit court altered the plat to reflect that the central easement encompasses utility access” because “[t]his right existed with respect to the central easement since its inception... .” Ante at 496. I agree. Accordingly, it is irrelevant to the outcome of this case whether, as a general proposition, the LDA allows courts to alter the underlying substantive rights of the property owners. Therefore, this Court does not need to address this issue.
Nonetheless, as I am forced to discuss it, I tend to disagree with the lead opinion’s conclusion that “[t]he LDA was never intended to enable a court to establish an otherwise nonexistent property right.” Ante at 496. I think that there are some flaws in the lead opinion’s reasoning and that this conclusion is too broad.
Both MCL 560.221 and 560.226(1) state that courts may vacate, correct, or revise a recorded plat. Section 226(1) lists several exceptions to this power, but otherwise does not explain when or why courts should vacate, correct, or revise a plat. The lead opinion reasons that the LDA’s grant of power to the courts to vacate, correct, or revise a plat is not a substantive power because the act defines a plat as a map, and everybody knows that revising a map does not automatically revise the underlying substantive property rights. Regardless of whether the majority on this issue is correct in *503 concluding that the LDA does not permit courts to alter property rights, I do not think that its reasoning is focused on the proper question.
The relevant question is not whether a plat is a map; rather, the question is whether the Legislature intended to give courts the power to alter substantive property rights by revising a map under the circumstances in a given case. The lead opinion gives as an example that “[i]f one ‘revises’ a map of the United States to show Michigan encompassing half of the country, it does not make it so.” Ante at 496. This statement is of course true of the average judge sitting at home with a book of Rand McNally maps and a permanent marker. But, if a duly empowered Legislature passed a statute stating that when a court revises the boundaries of a map, that revision has the legal effect of changing the boundaries, then a court’s revision of a map would indeed create a substantive change.[3] If the lead opinion’s conclusion is correct, the reason it is correct cannot be that a revision to a map, by definition, can never alter substantive property rights.
In addition to disagreeing with the lead opinion’s reasoning, I tend to think that the lead opinion’s statement that the LDA never permits courts to alter property rights through its power to vacate, correct, or *504 revise a plat is too broad.[4] Instead, I would state that the Legislature intended MCL 560.221 and 560.226(1) to permit courts to alter property rights in at least some circumstances. I will not attempt to exhaustively determine when the LDA grants courts the power to alter property rights because the facts of this case do not present a suitable basis for analyzing these issues. Regardless, I believe that this Court’s approach to this issue should be more cautious, nuanced, and case-specific than the approach taken by the lead opinion.
CONCLUSION
I would affirm the Court of the Appeals result and vacate its reasoning. I think that the easement language was latently ambiguous and that the circumstances surrounding its writing show that the grantors intended plaintiffs’ property to access utilities through the central drive easement. I respectfully dissent from the holding that the LDA never enables a court to alter property rights.
WEAVER, J., concurred with Cavanagh, J.

 This holding applies to the southern half of the central drive easement. The northern half of the central drive easement was reserved before platting, and with language distinct from the language used in the south drive easement.

 MCL 560.101 et seq.

 The act itself demonstrates that the Legislature in some instances intended that a plat not only reflect existing property rights, but also be the sole legal basis for creating that right. For example, MCL 560.253(1) states that “every dedication, gift or grant to the public or any person, society or corporation marked or noted as such on the plat shall be deemed sufficient conveyance to vest the fee simple of all parcels of land so marked . . . .” Under this provision of the LDA, if a plat is amended to include a dedication, then that amendment creates a property right. In other Words, the act of amending the plat also amends a property right.

 For example, this Court has stated that § 226(1) is the exclusive remedy for landowners seeking to vacate, revise, or correct a private dedication. Martin v Beldean, 469 Mich 541, 542-543; 677 NW2d 312 (2004). Vacating a dedication on a plat alters property rights; if § 226(1) is the “exclusive” way to make this change, then it must be that the statute itself permits courts to alter property rights. In Martin, this Court held that a plaintiff had to bring an action to void a private dedication under the LDA and not as an action to quiet title. Martin, 469 Mich at 550-552. If the LDA was not the legal basis for the court’s power to void a dedication, then this Court would have held that the plaintiff was required to bring an action to quiet title and an action under the LDA.