EQUIPMENT LEASING CORPORATION *v.* ARNTZ

1. CONTRACTS—CONSTRUCTION OF CONTRACTS—AMBIGUOUS TERMS.
   A contract containing ambiguous terms must be construed strictly against the drawer.

2. CONTRACTS—CONSTRUCTION OF CONTRACTS—AMBIGUOUS TERMS.
   A contract for truck rental calling for payment for a specified minimum number of miles per year and providing for proration of the minimum for a fraction of the year in which the lease was in effect, but coupling the proration provision with the statement that the minimum would not apply to any year in which the lease was terminated in accordance with a certain paragraph, which the lessor later contended was incorrectly identified, was ambiguous and could not support an action on it by its drawer, the lessor, for a prorated minimum rental when the equipment leased came into the lessor's possession by some means after five-sixths of the year had passed.

Appeal from Kent, John H. Vander Wal, J. Submitted Division 3 March 31, 1971, at Grand Rapids. (Docket No. 9951.)  Decided May 20, 1971.

Complaint by Equipment Leasing Corporation against Thomas Arntz and John Arntz for rent due

---

REFERENCE FOR POINTS IN HEADNOTES
[1, 2]  17 Am Jur 2d, Contracts § 276.

under a lease.   Judgment of no cause of action. Plaintiffs appeal.   Affirmed.

*William J. Garlington* (by *Harold U. Smiley, Jr.*), for plaintiffs.

*Gerald T. Graham,* for defendants.

Before:   HOLBROOK, P. J., and BRONSON and O'HARA,\* JJ.

HOLBROOK, P. J.   This case is based on a contract in the form of a transport equipment lease, entered into on March 4, 1966, with plaintiff, Equipment Leasing Corporation, as lessor and defendants, Thomas Arntz and John Arntz, doing business as Arntz Distributing Company, as lessee.

The plaintiff's complaint does not seek a reformation of the contract nor does it claim that the lessee breached the contract.   The plaintiff asserts that it is entitled to damages for rental due on the equipment as per the terms of the contract, and the pertinent parts are as follows:

"6. a. Lessee agrees to operate each tractor to be covered by this lease or endorsement thereon, a minimum of 30,000 miles during each lease year and shall pay rental therefor at the rate of twenty-eight and nine tenths cents ($.2890) per mile.   Provided that in the event said tractor shall be operated less than 30,000 miles in any lease year, the Lessee shall pay to the Lessor a sum equal to twenty-eight and nine tenths cents ($.2890) multiplied by 30,000 miles.   Such payments to be made within fifteen (15) days after the end of the lease year.   The

\* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

foregoing minimum shall not apply to any year in which the lease is terminated under the provisions as provided in Paragraph 7 below, provided that the Lessee shall be liable for a pro-rated portion of the yearly minimum based upon that fraction of the year in which the lease is in effect. If the tractor shall travel mileage in excess of 40,000 miles per annum, the rental for the entire mileage travelled will be as shown on Schedule "B". For purposes of this agreement, it shall be assumed that only the mileage travelled by tractors shall be used in figuring the mileage travelled, and no separate mileage records for trailers need be kept. The difference, if any, between the mileage paid at the highest rate per mile and the lower rate, if any, shall be repaid to the Lessee by the Lessor within fifteen (15) days after the end of the lease year.

\* \* \*

"7. The leased equipment is to be used exclusively in the service of the Lessee, it being understood and agreed that all of the freight transported in the equipment shall be and remain the exclusive property of the Lessee and shall be transported pursuant to the direction and under the exclusive control and supervision of the Lessee.

"8. In the event that Lessee shall breach any covenant or agreement by it to be performed, then Lessor shall have the right to give Lessee ten (10) days notice in writing of termination of this agreement and in the event that Lessee shall not make good such breach within said ten-day period, this agreement shall terminate at the end of said ten-day period. In the event that Lessee shall be adjudged a bankrupt, Lessor shall have the right to terminate this lease at any time without notice. In the event that Lessor shall be adjudged a bankrupt, Lessee shall have the right to terminate this agreement at any time without notice."

Paragraph 6a was amended in writing to provide a minimum yearly mileage of 25,000 miles with a rate per mile to be $.35 as of March 8, 1967.

At the end of the first year, defendant was billed by plaintiff on March 8, 1967, for the under-mileage which defendant paid in the amount of $2,622.68. Sometime in the latter part of the second year of operation, a meeting was held between plaintiff and defendants with another person present, who was a prospective lessee for the equipment, the subject of the contract in this lawsuit. The testimony of the parties to this suit was in conflict as to what happened at this meeting.

It is also contested as to how the equipment came into the possession of the plaintiff on or about January 2, 1968. Defendants claim that plaintiff came to their warehouse and repossessed it. Plaintiff claims that the defendants returned it to their place of business.

On January 3, 1968, plaintiff sent invoice number 48 to defendants for the mileage on the equipment from December 12, 1967 through January 2, 1968 of 408 miles at $.35 per mile for a total of $142.80. This was paid by defendants.

On February 7, 1968, plaintiff sent to defendants a letter which reads as follows:

No. 48        INVOICE        February 7, 1968
"TO: Arntz Distributing Company
        3711 Apple Avenue
        Muskegon, Michigan
"As per paragraph 6. a. of our lease contract dated March 8, 1966, we submit the following breakdown in support of the amount due our company.
"Total miles travelled by the tractor during
period 3/8/67 through 1/2/68 .............. 15,831
"Minimum mileage guarantee .............. 20,833
(5/6 of 25,000)

"Total amount we should have received
under the guarantee .................. $7,291.55
"Total amount we received for the
15,831 miles ........................ 5,515.54
"Total amount due us                 $7,776.01"

This claim of plaintiff's for $1,776.01 was the subject of this lawsuit.

The learned trial judge in deciding the case stated in his opinion as follows:

*"The Court:* The court, after listening to the testimony, finds that this contract, which was entered into between these parties, which is Exhibit 'A' or Exhibit '1', was terminated either in one of two ways, and it doesn't make any difference.

"It was either terminated because the lessees could not, as one witness testified here, that they couldn't do enough business to continue renting the equipment, Mr. Chambers.

"Now, Mr. Chambers testified that he found out that the equipment was returned to the terminal of the plaintiff in Muskegon. Then, he then called Tom Arntz, he told Arntz about it, and Arntz said he couldn't support the guarantee any more.

"Under that theory, the plaintiff would be entitled to damages for breach of contract, however, plaintiff is not seeking damages for breach of contract. He is not claiming any damages for the two months before the end of the second year of the lease, then, for breaking the contract and losing the item of business for the third year.

"Plaintiff isn't seeking that at all.

"What the plaintiff is seeking, in this case, is a minimal guarantee on a pro-rated basis, pro-rated because of taking ten months out of the second year and pro-rating it on the basis of five-sixths of the year, and plaintiff has sent a statement to the defendants of that amount, and the statement is set forth in Exhibit number 4, claiming that the num-

ber of miles for the ten months, 16,831 [*sic*] miles, which would be five-sixths of the twenty-five thousand.

"They should have received, under the guarantee $7,291.55 and they received $5,515.54, or the difference between the two leaves a balance of $1,766.01. But there is nothing in the lease that allows them to pro-rate it.

"I know counsel referred to the original contract which says, and I refer to paragraph 6, then in the middle of the page, it says:

" 'The foregoing minimum shall not apply to any year in which the lease is terminated under the provisions as provided in paragraph 7 below.  Provided that the lessee shall be liable for a pro-rated portion of the yearly minimum based upon that fraction of the year in which the lease is in effect.'

"However, that is tied up with:

" 'The foregoing minimum shall not apply to any year in which the lease is terminated under the provisions as provided in paragraph 7.'

"Now the president of the company has testified that paragraph 7 does not have anything to do with this case and the lease was not terminated under the provisions of paragraph 7.

"So, there is no place in the lease where I can pro-rate this.  In fact, they didn't figure this out until after the end of the two-year period, because they say,—total mileage traveled by the tractor, during the period 3/8/67 through 1/2/68.  Then they send them a statement in February.

"They also sent one in January for the $142 which has been introduced in evidence, but, they didn't add at that time, a bill for what they now call the pro-rated share of the minimum miles under the guarantee.

"Now this is wholly ambiguous to me.  I can't figure it out.  No other place in the contract does it provide for pro-rated portion of the yearly mini-

mum to be paid, and so, they are not suing for damages for breach of the contract. They are suing for this minimal under the contract.

"Therefore, I can't find where they,—they might be entitled to an action, but, they are certainly not entitled to this action.

"The court finds a verdict in favor of the defendants of,—no cause for action."

Plaintiff would have this Court construe the contract so as to insert paragraph 8 instead of paragraph 7 in paragraph 6a of the contract. This we cannot do for there was no request by the plaintiff of the trial court to do this. Plaintiff may be correct that the parties intended that paragraph 8 instead of paragraph 7 be the reference paragraph used in paragraph 6a. However, this contract was drawn by the plaintiff and it, being ambiguous, must be construed strictly against the drawer, in this case the plaintiff. *Seaboard Surety Company* v. *Bachinger* (1945), 313 Mich 174. 5 Callaghan's Michigan Civil Jurisprudence, Contracts, § 169, p 738. In any event, the plaintiff did not give *any notice* of termination of the contract as required by paragraph 8. Defendants had always paid for the use of the equipment including under-mileage charges for the previous year. An action for money due according to the terms of the contract precluded defendants from raising defenses that could have been advanced if the action had been based upon a breach of the contract. The offer of plaintiff to waive any claims for breach of the contract does not afford defendants their *full* day in court. Plaintiff in this case could not prevail unless the trial court gave the contract a strained interpretation. This the trial court declined to do. We, on review of the matter, likewise decline such a course of action.

We would not be understood by our decision here to adjudicate any rights plaintiff may have under any other theory consistent with the terms of the contract.

Affirmed.   Costs to defendant.

All concurred.