WASHTENAW ASPHALT COMPANY v STATE OF MICHIGAN

Opinion of the Court

1. Contracts—Ambiguity—Construction.

The language will be construed against the party who drafted the instrument in case of doubt or ambiguity in the terms of a contract.

2. Contracts—Construction.

A contract for paving which contained no language limiting the amount of work to be done to any fixed dollar budget or any fixed area other than that "pointed out [to the bidder] by the [defendant's] inspector" will be enforced against the defendant where plaintiff performed to the extent indicated by defendant's inspector, without objection by defendant, except that no compensation shall be due for work done in those areas that the parties agree were to be excluded if the cost was too great under the contract.

Dissent by J. H. Gillis, P. J.

3. Contracts—Construction—Cost Limits—Notice—Accounts.

*A contractor should not be able to recover for performance beyond the scope of the contract where he was put on notice that the work was to be done only to the extent of the cost limits, where he had a duty to keep a running account of the quantities and did, in fact, collect the delivery tickets, where solicitation was in unit prices rather than specific areas of work, and where defendant's inspector had no authority to change the scope of the work.*

Appeal from Court of Claims, Leo W. Corkin, J. Submitted Division 2 May 10, 1972, at Lansing. (Docket No. 12194.) Decided July 25, 1972.

References for Points in Headnotes
[1, 2] 17 Am Jur 2d, Contracts §§ 22, 148.
[3] 17 Am Jur 2d, Criminal Law §§ 122, 133, 353, 354, 462, 463.

Complaint by Washtenaw Asphalt Company in the Court of Claims against the State of Michigan. Judgment for plaintiff in the amount conceded by defendant. Plaintiff appeals. Reversed and remanded for entry of judgment in amount of plaintiff's claim less certain deductions to be determined by evidence.

*Hendley & Kensler,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Charles D. Hackney,* Assistant Attorney General, for defendant.

Before: J. H. GILLIS, P. J., and T. M. BURNS and TARGONSKI,* JJ.

TARGONSKI, J. This is an appeal from a judgment entered in the Court of Claims in favor of the plaintiff in the amount of $830.38, being precisely the amount conceded by the defendant as owing to the plaintiff. Plaintiff had initiated suit for the amount of $6,898.58. Plaintiff appeals from the findings of the trial court.

There is little in the way of fact issue in these proceedings. One Don Drew was designated in the contract as the State Inspector to point out to the contractor the areas to be paved in accordance with the contract entered into between the parties. This is vitally important since no plans were furnished to the contractor and the contract specifically provided " * * * The roads requiring work will be pointed out by the inspector * * * ". The only testimony offered as to the work to be performed was that of the State Inspector Drew and a

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Mr. Banker who testified as supervisor on the project for the plaintiff contractor. They are in accord in their testimony that, if there was any deletion to be made from the paving project because of inability to complete the work within the framework of the contract, it would be the gravel roads known as fire lanes and the gravel portion in the vicinity of "K" area or buildings. However, no testimony was offered which would help determine the value of such work which might be excluded if the terms of the contract were insufficient to encompass all of the work pointed out by Mr. Drew.

The parties executed a contract on June 3, 1969, under the terms of which the plaintiff was to construct a bituminous surfaced road over existing gravel and resurface existing bituminous road with sheet asphalt overlay on the grounds of Ypsilanti State Hospital in Ypsilanti, Michigan. The parties agree that bidding on the contract was on the basis of estimated quantity of material needed. The estimates were provided by the state, and the bidder inserted the unit price. The base proposal sum was determined from the estimates and unit prices and in this case was $16,607.70. The unit price was the governing term.

The plaintiff surfaced the areas pointed out by Mr. Drew in accordance with the provisions of the contract with the result that the total cost of the project amounted to $23,506.28. The plaintiff then instituted action for the balance of $6,898.58 after the state had made a payment of $16,607.70. The state admitted liability in the amount of $830.38 but denied liability as to the balance.

We have carefully read the transcript in the Court of Claims proceedings and examined the contract with great care, since the outcome hinges

here not on the finding of fact but rather on interpretation of the language of the contract as applied to the facts, on which there seems to be little dispute other than the question of the amount owing and the work contemplated. For this purpose it is important to bear in mind that the contract was drawn by the defendant State of Michigan. It is well established that in case of doubt or ambiguity in the terms of a contract, the language will be construed against the party who drafted the instrument. *Elby v Livernois Engineering,* 37 Mich App 252 (1971); *Keller v Paulos Land Co,* 5 Mich App 246 (1966), *aff'd* 381 Mich 355 (1968); *Seaboard Surety Co v Bachinger,* 313 Mich 174 (1945); *Michigan Chandelier Co v Morse,* 297 Mich 41 (1941).

The state contends that their Mr. Drew had no training or experience in road construction or resurfacing and that he was only monitoring the thickness of the material installed. They cannot escape the responsibility of their language which says that the work required will be pointed out by the inspector, which language appears on page 1 of their contract. The state maintains that it was the responsibility of the contractor to keep a running account of the quantities as appears on page 4 of the contract under the heading "quantities". However, again they cannot escape the responsibility of their language in Item 3 on page 3 of the contract wherein it is stated "Delivery tickets shall be furnished showing *net weight in pounds* of each load of bituminous material delivered and installed. Delivery tickets shall be initialed by the driver and the inspector. The inspector shall retain one copy of each delivery ticket for transmittal to the state building division upon completion of the project". It is true that under the uncontro-

verted testimony the contractor maintained such record of deliveries by weight as required by Item 3, page 3, of the contract. The fact that the inspector failed to retain one copy of each delivery ticket for transmittal to the state building division was not the responsibility of the plaintiff. It is conceded, and no testimony is offered in contravention, that it was impossible to determine in square yardage the amount of material furnished from the delivery tickets showing net weight in pounds of each load. However, that is the only type of record which the contract required the plaintiff to maintain.

Further, on page 3 the basis of payment is spelled out in the following language: "Payment for all work will be on the basis of the contract unit prices applied to the actual quantities installed." Also, on page 1 of the contract the state sets forth the following:

"Quantities as listed have been carefully estimated but are not guaranteed. The state reserves the right to increase or decrease the quantity of work to be performed at the unit prices by amounts up to 25 per cent of the quantities stated."

Another indication of the intent of the parties is the provision on page 1 in an earlier part of the contract as follows:

"The Base Proposal Sum in *[sic]* solicited and the amount is to be inserted by the bidder in the blank space provided above for the performance of the work described herein. It is to be computed on the basis of the unit prices, inserted by the bidder, applied to the estimated quantities stated. In case of variation between the unit price and the extension, the unit price will govern. Award of contract, if made, will be to the bidder whose base proposal sum is to the best interest of the state."

From an examination of the record, the briefs, and the contract, there is no question that the parties are in agreement that the bidding on the contract was on the basis of estimated quantity of material needed. The estimates were provided by the state, and the bidder inserted the unit price. The base proposal sum was determined from the estimates and unit prices and in this case was $16,607.70. The unit price was the governing term. No plans or blueprints accompanied the proposal since, according to the contract, the areas to be paved were to be pointed out to the bidder by the defendant's inspector, Don Drew, plant superintendent at the hospital. Nowhere in the contract do we find any language limiting the amount of resurfacing to be done to any fixed dollar budget or any fixed area other than that "pointed out [to the bidder] by the [defendant's] inspector". This is not a situation where we are asked to set aside findings of fact by the trial court where GCR 1963, 517.1 would apply with the end result that we would only set aside such findings when they are clearly erroneous. This is true since this rule in general applies in the Court of Claims. MCLA 600.6422; MSA 27A.6422. This is rather the interpretation of the legal significance of the terms of the contract as drafted by the defendant and accepted by the plaintiff.

The only testimony presented as to an exclusion from the work contemplated was as to the gravel fire lanes and the roads in the area of the K Building. We are unable to determine the value of this deletion since no testimony appears to have been taken as to the value of such work based on unit price considerations. Accordingly, this matter is remanded to the Court of Claims for proofs as to the value of this work and entry of a judgment for

the amount of the plaintiff's claim of $6,898.58 reduced by the value of the work in the areas described in this paragraph.

Reversed and remanded.

T. M. Burns, J., concurred.

J. H. Gillis, P. J. *(dissenting)*. Judge Leo W. Corkin, serving in the Court of Claims, handed down the following opinion:

"Plaintiff and defendant entered into a contract dated June 3, 1969 whereby plaintiff agreed to construct a bituminous surfaced road over existing gravel and re-surface existing bituminous surfaced road with sheet asphalt overlay on the grounds of the Ypsilanti State Hospital.

"The 'proposal' portion of the contract contained the following language with amounts inserted by the plaintiff.

" 'BASE PROPOSAL . . . . . . . Contract Award *$16,607.70*

" 'The Base Proposal Sum in *[sic]* solicited and the amount is to be inserted by the Bidder in the blank space provided above for the performance of the work described herein. It is to be computed on the basis of the unit prices, inserted by the bidder, applied to the estimated quantities stated. In case of variation between the unit price and the extension, the unit price will govern. Award of contract, if made, will be to the bidder whose Base Proposal Sum is to the best interest of the State.

" 'Quantities as listed have been carefully estimated but are not guaranteed. The State reserves the right to increase or decrease the quantity of work to be performed at the unit prices by amounts up to 25 per cent of the quantities stated.

| Description | Est. Quantity | Unit | Unit Price | Amount |
|---|---|---|---|---|
| 1. Install 350 pound bituminous base course over gravel drives plus 60 pound wearing course | 4,130 sq. yds. | sq. yd. | $2.10 | $8,673.00 |
| 2. Surface preparation and application of a tack coat | 14,130 sq. yds. | sq. yd. | $ .19 | $2,684.70 |
| 3. Resurface existing bituminous road with 60 pound sheet asphalt course | 10,000 sq. yds. | sq. yd. | $ .525 | $5,250.00' |

"No plans accompanied the proposal form because the roads requiring the work were to be pointed out to plaintiff by defendant's Inspector, a Mr. Don Drew who was Plant Superintendent at the hospital.

"Plaintiff was awarded the contract on the basis of its Base Proposal Sum in the amount of $16,607.70; the total of its unit price bid.

"Following the execution of the contract and before the work was commenced Mr. Banker, plaintiff's foreman, met with Mr. Drew to ascertain the roads to be surfaced. Mr. Banker testified that Mr. Drew showed him the area to be surfaced if there was a sufficient quantity of material within the contract limits to do the work. Mr. Drew testified that he told Mr. Banker that they had about $16,000.00 to spend, showed him the area they wanted surfaced, and indicated the area to be deleted if and when the funds available were exhausted.

"Apparently plaintiff commenced work and surfaced the entire area pointed out by Mr. Drew resulting in a total cost billed to defendant in the amount of $23,506.28. The State paid $16,607.70 and admits liability for a 5% overrun in the amount of $830.38, but refuses to pay the balance.

"Neither party kept a running account of the area of surfacing laid as the work progressed. Delivery tickets accompanied each load of bituminous material delivered to the job site showing the net weight in pounds of the material delivered. By the terms of the contract these tickets were to be initialed by the driver and Inspector, but this was not done.

"Plaintiff bases its claim for full recovery on the theory that the State by giving its agent, Mr. Drew, the authority to point out the roads to be surfaced made it appear to plaintiff that he had authority to transmit all information to plaintiff; that the plaintiff could reasonably believe that the agent was acting within the scope of his authority since no plans accompanied the specifications; that prior dealings had showed plaintiff that the State often enlarged or reduced the area to be covered between the time that the proposal issued and the contractor actually started work, where the contract price was based upon a per unit bid; and that the original proposal did not constitute a warranty as to actual amount to be used and therefore the contractor had no duty to question the agent's authority where the amount eventually requested was greater than originally proposed. In plaintiff's view *A J Smith Construction Co v Marine City,* 267 Mich 367 (1934), is factually identical to this case and should be controlling.

"In the opinion of the court there were two important elements in the *Smith* case not present in this case in that (1) there was no question but what the extra work was ordered by the agent, and (2) the city had, over a long period of time, acquiesced in paying for extras ordered by the agent. As the court understood Mr. Drew's testimony he pointed out roads that they would like to have surfaced, but made it clear that funds were limited and some of the desired work might have to be deleted if the contract amount was not sufficient. While Mr. Banker's testimony was somewhat different it was to the effect that some of the area pointed out by Mr. Drew was to be surfaced only if there was sufficient material within the terms of the contract. The court is persuaded that Mr. Drew did not order the entire area shown to be surfaced no matter what the cost and that plaintiff through its foreman was put on notice that the entire area pointed out was to be surfaced only if it could be accomplished within the framework of the contract as to material and cost. There is no evidence that Mr. Drew ordered any extras that were paid for by defendant.

"Plaintiff also makes point of the fact that defendant's Inspector Drew was remiss in not picking up the

delivery tickets. Had he done so and kept a running
record, he could have stopped the work when the con-
tract limits were reached. Not having done so and
having allowed the work to continue to defendant's
benefit and plaintiff's detriment the State, because of its
agents' actions, should be required to pay the plaintiff
the reasonable value of the work. This argument as-
sumes that the delivery tickets showing pounds deliv-
ered could be translated by Drew into square yards laid.
The testimony was to the effect that Drew had and
claimed no expertise in road surfacing and that all he
checked was the thickness of the surfacing. As a matter
of fact, the delivery tickets were collected by plaintiff's
foreman and it might well be asked why he kept no
running account of the square yards of material used in
view of his notice that a limited amount of money was
available for the project.

"While the court thinks the contract in question is
not as clear as might be desired it is not as ambiguous
as plaintiff's reading would indicate.

"A fair reading of the Proposal-Contract would indi-
cate that defendant was concerned with the Base Pro-
posal Sum and that the unit price was based on a
quantity of work; not specific area or roads. The court
agrees with defendant that the fact that the defendant
was soliciting prices rather than a specific quantity of
work is evident from the unit price framework of the
contract. Plaintiff was on notice that it was to install
specified quantities of materials at a location to be
designated by the Inspector; not to pave specific roads
irrespective of quantity or cost.

"It would also appear to the court that Mr. Drew did
not in fact change the scope of the work. The contract
makes it quite clear (page 2 of contract) that he had no
authority to do so and changes could be made only by
the Director of the Building Division of the State (Gen-
eral Conditions 12). Again, a fair reading of the con-
tract would negative plaintiff's claim of apparent au-
thority being vested in its Inspector by the defendant.

"Finally, the contract provides: 'Quantities: It is the
responsibility of the Contractor to keep a running ac-
count of the quantities. No overrun in excess of 5 per
cent will be permitted without authorization from the

Director.' This was not done with the result that plaintiff laid surfacing beyond the scope of the contract.

"In short, it would appear to the court that plaintiff gave little thought to the contract provisions, and barged ahead with surfacing all the area pointed in spite of the fact that limited funds were available and that all the surfacing was to be done only if it could be accomplished within contract quantities and cost.

"Judgment may enter for plaintiff for the amount of 5% overrun only with no cause of action as to the balance of the claim. No costs."

I am in total agreement with his findings and would affirm him.