## BARWIN v FREDERICK & HERRUD, INC.

1. Contracts—Irrevocable Options—Consideration—Findings of Fact—Appeal and Error—Clear Error.

   The findings of a trial court that sufficient consideration was supplied by the holder of an irrevocable stock purchase option to support a contract action for enforcement of the option will not be disturbed on appeal unless clearly erroneous. (GCR 1963, 517.1).

2. Contracts—Consideration—Doubtful Claims—Surrender of Claims—Validity—Honest Belief.

   Surrender of even doubtful claims upon honest and reasonable belief in the validity of such claims is legal detriment amounting to consideration which will support a contract.

3. Contracts—Stock Purchase Options—Revocation—Communication—Evidence—Question of Fact.

   Revocation of a stock-purchase option must be communicated to the offeree to be effective, and, where there is conflicting evidence of communication, it is a question of fact for the trier of fact.

4. Contracts—Terms—Construction—Strict Construction—Drawer—Layman.

   The terms of a written agreement will be strictly construed against the drawer, where construction is called for, notwithstanding that the agreement was drawn by a layman.

5. Contracts—Courts—Review—Purpose of Parties—Context—Conditions—Implication—Obvious Purpose—Annulment—Appeal and Error.

   The Court of Appeals reviews contract cases with an eye towards the principal purpose of the parties in the context in which the

---

References for Points in Headnotes

[1] 5 Am Jur 2d, Appeal and Error § 841.

[2] 17 Am Jur 2d, Contracts §§ 114, 117.

[3] 17 Am Jur 2d, Contracts §§ 32, 35, 36.

[4] 17 Am Jur 2d, Contracts § 240 *et seq.*

[5] 17 Am Jur 2d, Contracts § 18 *et seq.*

parties contracted; conditions will not be implied without reason and never to annul the obvious purpose of the agreement.

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 April 10, 1975, at Lansing. (Docket No. 20000.) Decided June 24, 1975.

Complaint by Henry A. Barwin against Frederick & Herrud, Inc., for damages received as a result of defendant's failure to honor a stock purchase option. Judgment for plaintiff. Defendant appeals. Affirmed.

*Miller, Johnson, Snell & Cummiskey* (by *Jon R. Muth),* for plaintiff.

*Honigman, Miller, Schwartz & Cohn (James K. Robinson* and *Edward F. Kickham,* of counsel), for defendant.

Before: V. J. BRENNAN, P. J., and D. E. HOL-BROOK and M. F. CAVANAGH, JJ.

D. E. HOLBROOK, J. Defendant appeals as of right from an April 4, 1974, judgment for plaintiff in the amount of $14,000 plus interest and costs as a result of defendant's failure to honor a stock purchase option which defendant had given plaintiff.

Plaintiff filed, on February 5, 1973, a complaint alleging that, as a part of his termination of employment with defendant, he was given a stock purchase option which he later attempted to exercise, but which defendant refused to honor. Defendant answered on March 15, 1973, after which plaintiff filed an amended complaint.

After defendant had answered the amended complaint on June 25, 1973, a nonjury trial commenced on March 20, 1974. At the conclusion of the trial the judge dictated an opinion from the

bench in plaintiff's favor. A judgment was entered on April 4, 1974, awarding plaintiff damages of $14,000 plus six percent from April 28, 1972, and costs. The trial court on April 19, 1974, entered an order staying execution of judgment pending determination of the present appeal.

Plaintiff Henry A. Barwin testified that he began working for Herrud Company in 1957 and later during the course of his employment was executive vice-president and general manager of that company. He related that he negotiated the sale of Herrud to Frederick and stated that after the sale he was made president of Herrud & Company. On July 8, 1970, plaintiff was terminated by Dorfman, chairman of the board of defendant. Plaintiff testified that during a discussion with Dorfman at this time, he reminded the latter of various promises which had been made during the course of plaintiff's employment but not kept. These alleged promises related to (1) ability to purchase 25 percent of Herrud's stock, (2) lifetime employment, and (3) an automobile. Plaintiff was given checks totaling $8,000 for vacation payment and estimated bonuses, including $1,500 for other reasons. On July 9, 1970, plaintiff formally resigned by executing four separate resignations for his various positions and talked with company official Donald Braam, its vice-president. Braam related that he would draft a stock option purchase plan; something which had not previously been discussed by the parties. The option when drafted and which is the subject of this lawsuit provides:

"This agreement entered into on this 10th day of July, 1970 hereby entitles Henry A. Barwin to procure one thousand (1,000) shares of stock of Frederick Packing Co.-Herrud & Co. consolidation, provided there is a

public offering, and provided, that such purchase be consumated within one (1) year from date of such public offering. Cost per share will be equal to the price that key personnel of such Corporation will be permitted to buy it."

Mr. Barwin testified that because the compensation he received at the time of his termination was not, in his estimation, a final settlement of the actual amount due him, he later sued defendant and settled this suit on December 13, 1971, before he exercised the stock purchase option. Plaintiff related that he later discussed the option with Dorfman and Dorfman at that time told him, in effect, to go ahead and exercise it. Contending that he had no notice of revocation by defendant, plaintiff maintained that he had exercised his stock purchase option by a letter to defendant, dated April 28, 1972, with which he enclosed his check for $5,000 in payment for 1,000 shares at $5 per share; the price listed in an October 1971 prospectus which Barwin had perused. Defendant rejected plaintiff's letter exercising his stock purchase agreement.

Plaintiff testified that he took the $5 stock price from the prospectus dealing with a restricted stock plan for key employees, but did not feel that the restrictions on the stock, as described in that plan, should apply to his 1,000 shares. Mr. Barwin recalled a letter from his former attorney to defendant stating that all potential areas of dispute should be settled between the parties, but indicated that no settlement resulted from that letter.

Mr. Braam testified that he and Dorfman discussed the idea of a stock purchase option for plaintiff on July 8, 1970, and Dorfman then ordered Braam to draft such a document. Although he described himself at the trial as a layman, Mr.

Braam nevertheless drafted the stock purchase option and at the time of drafting knew of no restricted key employee stock purchase plan to follow. In fact, no such plan then existed.

On cross-examination the witness related that at the time of their discussions Mr. Barwin wanted to be treated like all other key people with regard to stock if the company went public, and Dorfman stated he would see that Barwin would be treated like key personnel for the 1,000 shares. According to Braam, the key employee restricted stock purchase plan was adopted in the summer of 1971 (before the public stock offering), but was not related in any way to the later public offering. Mr. Braam could recall no statement made in his presence by Dorfman to the effect that plaintiff had the stock purchase option and should exercise it.

After defense counsel had moved unsuccessfully for dismissal of the case, he called as his first witness Mr. Henry S. Dorfman, who testified that at the time of his termination discussion with plaintiff, plaintiff inquired of him if the corporation was going to "go public" and stated that if it did "go public" he would like to buy 1,000 shares of stock. The witness at that time replied that he did not know if the corporation would "go public", but related that if it did he would treat Mr. Barwin the same as he was going to treat his key personnel although Barwin would be "under the same restrictions as anyone else is".

An attorney, who handled various legal matters for defendant, including security registration, etc., testified that the company's restricted key employee stock purchase plan was adopted July 27, 1971, while the public stock offering became effective on October 14, 1971. Sales under the re-

stricted stock plan for key employees took place on
September 15, 1971. He related that the restricted
stock sale was not conditioned upon the subse-
quent public offering and described the public
stock offering as it related to non-key employees of
Frederick & Herrud, stating that 69 employees
bought stock at the public offering, including six
who had also participated in the key employee
restricted stock purchase plan. The key employees
bought restricted stock at $5 a share. The over-the-
counter stock was offered at 16-7/8.

The trial judge made findings of fact in his
opinion as follows:

"I am of the opinion that the option given at the time
of termination was a settlement of all of the disputes
between the parties and it is valid and was for a
consideration which would be valid.

"I am further of the opinion that this offering to the
key personnel of the restricted stock which is listed in
the prospectus and contained in Exhibit 12, the re-
stricted stock purchase plan, was for key personnel and
is not the same as the one for every employee.

"I am further of the opinion in interpreting the
agreement that it fixes in its own terms the fact that
costs per share will be equal to the price that key
personnel of such corporation will be permitted to buy
it. Counsel for defendant would urge upon the court
that the court should rewrite this contract, and say that
means he could buy the same stock, if I am going to
rule this way, as the key personnel with the same
restrictions. I have difficulty in reaching that conclusion
and feel when it says cost per share will be equal to the
price key personnel of such corporation will be permit-
ted to buy it, it is merely a reference to the cost and the
price.

"I realize that this was drawn by a layman so that a
contract like this must be construed and drawn by the
defendant Mr. Dorfman and Mr. Braam, and it must be
construed against them, and it seems to me it would

have been easy to say buy the same type of stock or the same stock with the same terms and conditions as other key personnel. It does not say that. It refers only to price.

"I notice also that this is limited to 1,000 shares, yet in the offering to Mr. Braam who is the successor president, he was offered 4,000 shares.

"I am therefore of the opinion that the price is to be fixed by the cost per share which will be equal to the price key personnel of such corporation will be permitted to buy, which would be $5 per share.

"I am further of the opinion the option was exercised according to its terms. It had not been revoked prior to that, and even though there are means of revoking by implication and by other action, this was not so revoked, and the mere fact that there is evidence in Mr. Breay's memorandum that Mr. Barwin had some doubts about the validity of the option in December or November 24, of 1971, does not mean it had been revoked, and I am of the opinion it was not revoked."

Defendant now presents three allegations of error for this Court's consideration. We approach the case on the basis of GCR 1963, 517.1, *i.e.,* whether the trial court was clearly erroneous.

I

*Was plaintiff's stock purchase option supported by consideration so as to be irrevocable by defendant?*

While plaintiff himself did testify that the option per se came as a surprise to him, there was, likewise, testimony that disputed items had been discussed and remained unresolved between plaintiff and defendant. Surrender of even doubtful claims upon honest and reasonable belief in the validity of such claims is legal detriment amounting to consideration. See, generally, 17 Am Jur 2d, Contracts, § 111, pp 457–458, and *Hewett Grocery*

*Co v Biddle Purchasing Co,* 289 Mich 225, 233–234; 286 NW 221 (1939). At best, whether consideration was supplied so as to support an irrevocable option was a question of fact and we cannot say that the trial judge, who had the opportunity to see and hear the witnesses, was clearly erroneous.

## II

*Assuming, arguendo, plaintiff's stock purchase option was revocable by defendant, did defendant actually revoke said option and did plaintiff have knowledge of this revocation prior to his acceptance letter of April 28, 1972?*

Revocation must be communicated in order to be effective. See, generally, 17 Am Jur 2d, Contracts, § 35, p 374. Under conflicting evidence this is a question of fact. *Cf., id* at 375.

There is no contention present in the instant case that there was an express revocation communicated to plaintiff but rather that it was implied, *inter alia,* by the fact that no recitation of plaintiff's option appeared in the prospectus which plaintiff perused. Any other facets which defendant presents on the issue are of no more substance. Accordingly, we cannot say that the finding of the trial court was clearly erroneous.

## III

*Did the trial judge correctly construe the terms of plaintiff's stock purchase option?*

Both parties argue that the option was plain and unambiguous on its face; plaintiff that the term "cost per share will be equal to the price key personnel of such corporation will be permitted to buy it" refers only to the price that plaintiff would have to pay by reference if he decided to exercise

the option, and defendant that this meant simply that plaintiff was to be treated equally with other key personnel if and when there was a public offering and, as such, plaintiff was either entitled to restricted stock at $5 per share or unrestricted stock at the market price of 16-7/8. If construction is called for, notwithstanding that the agreement was drawn by a layman, there must be strict construction against the drawer. See, for instance, *Equipment Leasing Corp v Arntz,* 33 Mich App 602, 608; 190 NW2d 305, 308 (1971), *Washtenaw Asphalt Co v State of Michigan,* 42 Mich App 132, 135; 201 NW2d 277, 278 (1972), and cases cited therein. Moreover, we realize that we should be reviewing cases of this sort with an eye towards the principal purpose of the parties in the context in which the parties contracted. See *Stark v Budwarker, Inc,* 25 Mich App 305, 313, 316; 181 NW2d 298, 301, 303 (1970). Likewise, conditions should not be implied without reason and never to annul the obvious purpose of the agreement. 17 Am Jur 2d, Contracts, § 33, p 371.

For us to accept the position of the defendant that plaintiff must qualify for the issuance of stock under the key personnel plan and be subject to its restrictions, would mean that we would graft upon plaintiff's option conditions not present therein and would also prevent plaintiff from exercising his option, for under the key personnel plan offer plaintiff was ineligible to participate because he was at the time not employed by defendant. Thus, defendant has only "muddied the water" in its attempts to nullify the option. We find no grounds to conclude that the trial court incorrectly construed the terms of the option here at issue.

Although both parties have presented arguments in support of their respective positions in

this matter, the option language and all of the facts and circumstances surrounding the formation of the option compels the conclusion that the trial court was correct and did not err in ruling for plaintiff.

Affirmed. Costs to plaintiff.